520 A.2d 451

COMMONWEALTH of Pennsylvania, Appellee,

v.

Woodrow W. KIRKWOOD, Jr., Appellant.

Superior Court of Pennsylvania.

Argued Sept. 5, 1986.

Filed Jan. 23, 1987.

David F. Megnin, Kittanning, for appellant.

Before CAVANAUGH, WIEAND and JOHNSON, JJ.

WIEAND, Judge:

The principal issue in this appeal is whether a simple assault is committed by one who, during a dance, grabs a partner by the arm and swings the partner violently about the dance floor as a result of which the partner sustains bruises and fingernail marks of the arms.

As a result of such an incident, Woodrow W. Kirkwood was tried by a jury and was found guilty of simple assault. Post-trial motions were denied, and the court thereafter suspended a sentence of imprisonment and placed Kirkwood on probation for a period of two years. On direct appeal from the judgment of sentence, Kirkwood argues that: (1) the evidence was insufficient to show bodily injury inflicted intentionally, knowingly or recklessly; (2) the prosecutor improperly interviewed defense witnesses prior to trial; (3)

trial counsel was constitutionally ineffective for failing to plead surprise and cross-examine a defense witness after she had given testimony at variance with her pre-trial statement; and (4) after-discovered evidence compelled the granting of a new trial.

Section 2701(a) of the Crimes Code, 18 Pa.C.S. § 2701(a) provides that "[a] person is guilty of assault if he: (1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another...." The term "bodily injury" is defined as an "impairment of physical condition or substantial pain." 18 Pa.C.S. § 2301.

"In reviewing the sufficiency of the evidence, we view all the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the Commonwealth, which has won the verdict." *Commonwealth v. Rivera*, 349 Pa.Super. 303, 305, 503 A.2d 11, 12 (1985) (en banc). The evidence in this case included the following.

Paula Sheasley testified that on the evening of August 11, 1984, she, along with her husband, her sister, and her brother-in-law, went to the Greendale Tavern in Cowanshannock Township, Armstrong County, to dance and to get something to eat. At approximately 1:30 a.m. on the following morning, she observed that Kirkwood was also at the tavern. Sheasley was a correctional officer at the Armstrong County Prison, and she knew Kirkwood as a former inmate who was then on parole. Later, while she was dancing a fast dance with the other members of her party, she said, Kirkwood had approached her, had grabbed her by the arm and had begun to swing her violently around the dance floor. Sheasley said that she had pleaded with Kirkwood to stop because he was hurting her, but that he had continued to swing her until her husband intervened. The incident, she said, lasted approximately forty seconds and left her with bruises and cut marks on her arms. As a result, she testified, she suffered pain in her arms and her right knee for a short period of time thereafter. Her

version of the incident was corroborated by her husband, her sister and her brother-in-law.[1]

The term "bodily injury" and the definition thereof contained in 18 Pa.C.S. § 2301 have not been considered by the appellate courts of this Commonwealth in the factual context of a strenuous or violent dance. This Court, on two occasions, has concluded in the context of facts constituting the crime of rape that a simple assault occurred (1) when the victim was struck upon the head with an object hard enough to almost knock her unconscious, *Commonwealth v. Adams*, 333 Pa.Super. 312, 482 A.2d 583 (1984); and (2) when the victim was twice struck across the face from which, a majority of the court concluded, pain could be inferred, *Commonwealth v. Jorgenson*, 341 Pa.Super. 550, 492 A.2d 2 (1985). These decisions, however, are of little assistance to us as we attempt to apply the simple assault section of the Crimes Code to the facts of the instant case. Of greater assistance are this Court's decisions in *Commonwealth v. Fry*, 341 Pa.Super. 333, 491 A.2d 843 (1985), where we held that it was not an assault to put one's arms about a child and pick her up, and *The Interest of J.L.*, 327 Pa.Super. 175, 475 A.2d 156 (1984), where we held that the

1. Kirkwood denied that an assault had occurred. The defense contended that the charge was false and that criminal proceedings had been instituted in retaliation for a civil action which Kirkwood had filed against the warden of the Armstrong County Prison. Although conceding his presence at the dance and that he had danced with Paula Sheasley, his testimony was sharply at variance with the Commonwealth's version. He testified that while dancing a slow dance with Golda Elkin, Sheasley had cut in and asked him to dance with her. Kirkwood, according to the defense version, had agreed and had left his date standing on the dance floor. The dance had been completed, he said, without incident. His testimony was corroborated by Edna Kilgore, who had been seated at the same table with Kirkwood and others. It was also confirmed in part by Golda Elkin. She surprised the defense, however, by testifying that Kirkwood had rejected Sheasley's invitation to dance and had continued to dance with her. It was defense counsel's failure to plead surprise and cross-examine Golda Elkin regarding contradictory pre-trial statements which gave rise to Kirkwood's contention that trial counsel was constitutionally ineffective. It was Golda Elkin's post-trial admission that her testimony had been incorrect and that Kirkwood, in fact, had accepted Sheasley's invitation to dance which was the after-discovered evidence upon which the motion for new trial was based.

act of pushing another away with one's elbow without evidence of an intent to injure was insufficient to constitute an assault.

The Official Comment to the Pennsylvania Crimes Code suggests that the definition of bodily injury appearing at 18 Pa.C.S. § 2301 was derived from Section 210.0 of the Model Penal Code. The Comment to the Model Penal Code, in turn, suggests that the definition of "bodily injury" was based on section 10.00 of the crimes code of New York. See: Toll, Pennsylvania Crimes Code Annotated § 2301 (1974 ed.). Therefore, we look also to decisions of the courts of New York, where we are able to find additional guidance. In interpreting the crimes code of New York, the courts of that state have held that petty slaps, kicks and shoves do not amount to "bodily injury." *In re Philip A.*, 49 N.Y.2d 198, 424 N.Y.S.2d 418, 400 N.E.2d 358 (1980). In the absence of evidence of physical impairment, moreover, testimony that the alleged victim sustained a very sore neck was insufficient to show that she had suffered the requisite bodily injury or substantial pain. *People v. Hargrove*, 95 App.Div.2d 864, 464 N.Y.S.2d 224 (1983). And where there was a swelling and a red mark on the victim's face, this was held insufficient as a matter of law to establish "impairment of physical condition or substantial pain." *In re Philip A., supra.* Also, a one centimeter cut above the lip, without more, was held to be inadequate to show that the alleged victim had suffered either "substantial pain" or "impairment of physical condition." *People v. Jimenez*, 55 N.Y.2d 895, 449 N.Y.S.2d 22, 433 N.E.2d 1270 (1982). Finally, an incidental reference to a blackened eye without any development of its appearance, seriousness, accompanying swelling, or suggestion of pain was held insufficient in *People v. McDowell*, 28 N.Y.2d 373, 321 N.Y.S.2d 894, 270 N.E.2d 716 (1971). On the other hand, a punch in the nose, even where the victim has missed no time from work, was held adequate to show bodily injury in *People v. Chesebro*, 94 App.Div.2d 987, 463 N.Y.S.2d 711 (1983); and a kick in the stomach, even though not requiring medical attention, was held to be sufficient to show bodily injury within the

statutory definition in *In re Parks,* 78 Misc.2d 281, 356 N.Y.S.2d 440 (1974).

The New York decisions, of course, are not binding upon us in our quest to ascertain the intent of the legislature in this Commonwealth. Nevertheless, the prior decisions in New York and the prior decisions of this Court suggest that the assault section of the Crimes Code was intended to protect and preserve one's physical well being and was not intended to prevent temporary hurts resulting from trivial contacts which are a customary part of modern day living. See: *Interest of J.L., supra,* 327 Pa.Super. at 178, 475 A.2d at 157. ("... it is difficult to attach criminality to the pushing, shoving, slapping, elbowing, hair-pulling, perhaps even punching and kicking, that frequently occur between siblings or other members of the same family."). The Pennsylvania legislature, in recognition that not all physical contact constituted an assault and in an attempt to close any loophole which remained by virtue of the definition of assault, created the summary offense of harassment, which it defined to include a situation in which "[a] person ... with intent to harass, annoy or alarm another person: (1) ... strikes, shoves, kicks or otherwise subjects him to physical contact, or attempts or threatens to do the same...." 18 Pa.C.S. § 2709.

In the instant case, the defendant's uninvited attentions and violent dancing, according to the victim, caused bruises and slight cuts on her arms, and her right knee and arms hurt as a result of the manner in which appellant swung her during the dance. There was no evidence that she had consulted a physician or that she had lost time from work. We conclude that this evidence was insufficient to establish either the "physical impairment" or the "substantial pain" which is necessary to prove the crime of criminal assault as defined in 18 Pa.C.S. § 2701. Temporary aches and pains brought about by strenuous, even violent, dancing are an inadequate basis for imposing criminal liability upon a dance partner for assault. Appellant's invitation to the

dance, even if uncivil and harassing, was not assaultive within the meaning of the statute.

The judgment of sentence is reversed, and appellant is discharged.[2]

CAVANAUGH, J., files a concurring opinion.

JOHNSON, J., files a dissenting opinion.

CAVANAUGH, Judge, concurring:

I concur with the majority's analysis and agree that appellant is properly ordered discharged. I write separately because I believe that the behavior involved in this case does not rise to the level of criminal harassment but rather falls within the purview of 18 P.S. § 312, relating to *de minimus* infractions.[1]

In relevant part, the *de minimus* infractions statute reads as follows:

(a) General rule.—The court shall dismiss a prosecution if, having regard to the nature of the conduct charged to constitute an offense and the nature of the attendant circumstances, it finds that the conduct of the defendant:

(1) was within a customary license or tolerance, neither expressly negatived by the person whose interest was infringed nor inconsistent with the purpose of the law defining the offense;

(2) did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction;

or

---

**2.** Although our decision makes it unnecessary to decide the arguments advanced by appellant in support of a new trial, we have nevertheless reviewed the same and find that they were correctly decided by the learned trial judge.

**1.** Although appellant did not argue dismissal on this basis before the lower court, dismissal for a *de minimus* infraction should be granted sua sponte where the circumstances warrant. *Commonwealth v. Gemelli,* 326 Pa.Super. 388, 474 A.2d 294 (1984).

(3) presents such other extenuations that it cannot reasonably be regarded as envisaged by the General Assembly or other authority in forbidding the offense.

Appellant's conduct during the 40–second whirlwind encounter and its lack of resultant bodily harm constitutes an infraction too trivial in nature to warrant the condemnation of conviction. The circumstances surrounding this incident indicate that appellant may not be held criminally culpable for complainant's minor and temporary injuries. Appellant should not be stigmatized with a criminal conviction for actions which may be considered, if not customary, at least not wholly extraordinary during a fast dance at a tavern.

JOHNSON, Judge, dissenting:

In his appeal to this Court appellant raises five issues:

I.  Whether the recantation testimony of a central witness warrants the granting of a new trial?

II. Whether defendant should have been granted a new trial on the basis of after-discovered evidence?

III. Whether the conduct of the prosecution in handling this case was so improper as to constitute a denial of due process and equal protection?

IV. Whether defendant had effective assistance of counsel prior to and in the course of the trial?

V.  Whether the evidence was sufficient to support a conviction of simple assault?

The majority reverses the judgment of sentence and discharges appellant based on its finding that the evidence was insufficient to support a conviction of simple assault. I disagree. I believe the evidence was sufficient and, finding no merit in Appellant's other arguments, I would affirm the conviction. Accordingly, I dissent.

The majority concludes that the:

evidence was insufficient to establish either the "physical impairment" or the "substantial pain" which is necessary to prove the crime of criminal assault as defined in 18 Pa.C.S. § 2701. Temporary aches and pains brought

about by strenuous, even violent, dancing are an inadequate basis for imposing criminal liability upon a dance partner for assault.

Majority op. at 275. I believe the evidence presented by the Commonwealth sufficienty supports the conviction.

We have stated on previous occasion that:

In determining whether the evidence is sufficient to support a conviction, we accept as true all the evidence, and the reasonable inferences therefrom, upon which the fact-finder could have based its verdict and then ask whether that evidence, viewed in a light most favorable to the Commonwealth, was sufficient to prove guilt beyond a reasonable doubt.

*Commonwealth v. Crawford,* 334 Pa.Super. 630, 632–33, 483 A.2d 916, 917 (1984). The testimony of the victim, Paula Sheasley, established the following. The victim, her husband, her brother-in-law and his wife were fast dancing at the Greendale Tavern. While they were dancing in a circle the appellant tapped Sheasley on the shoulder. Sheasley testified that she turned around and appellant grabbed her by the arms. He said something to her and started flinging her around. His nail went into the lower part of her arm. Sheasley testified that appellant Woodrow Kirkwood:

just started flinging me. Like I couldn't call it dancing. I mean he was flinging me and I asked him to stop. The first time I said, "Woody, would you please stop, you're hurting me." And he didn't stop. So the second time I said—I was getting angry and it was hurting. I was in pain, and I said, "Woody, would you please stop, it hurts." And he didn't stop. Then the third time I said, "Please stop, Woody, it hurts." And I almost fell then. I asked him to stop the third time after I almost fell, but he still had a hold of me at the time. And I slid down on my right leg, but I didn't completely fall to the floor. But I slid and my right leg went out from underneath me.

N.T. 11/23/84 at 26. The incident lasted 40 seconds, until Sheasley's husband intervened. Sheasley sustained bruises

and nail marks on both arms where appellant grabbed her. In fact, her arms were slightly sore for the next day or few days and her right knee bothered her for over a month.

In defining the offense of simple assault, 18 Pa.C.S. § 2701 provides that:

A person is guilty of assault if he:

(1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another;

18 Pa.C.S. § 2701(a). Bodily injury consists of:

Impairment of physical condition or substantial pain.

18 Pa.C.S. § 2301.

My reading of Sheasley's testimony, as well as the testimony of her husband and her brother-in-law, is that appellant impaired Sheasley's physical condition and caused her substantial pain. She suffered bruises on her arms and scars from appellant's fingernails. At the time of the incident, she told appellant three times that he was hurting her and asked him to stop. Appellant ignored her pleas. Sheasley eventually slid down on her right leg in such fashion that her knee bothered her for over a month.

This case does not present this Court with the situation of an intra-family squabble, as in the case cited by the majority, *In the Interest of J.L.*, 327 Pa.Super. 175, 475 A.2d 156 (1984). The majority states that:

the prior decisions in New York and the prior decisions of this Court suggest that the assault section of the Crimes Code was intended to protect and preserve one's physical well being and was not intended to prevent temporary hurts resulting from trivial contacts which are a customary part of modern day living.

Majority, op. at 275. I do not consider the 40 second violent flinging of Sheasley to be a trivial contact which is a customary part of modern day living.

I believe the evidence is not only sufficient to establish bodily injury but also sufficient to establish intent. The Pennsylvania Crimes Code provides that:

(1) A person acts intentionally with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result;

18 Pa.C.S. § 302(b). Intent can be inferred from circumstantial evidence. *Commonwealth v. Moore*, 261 Pa.Super. 92, 395 A.2d 1328 (1978). The evidence adduced at trial shows that appellant not only approached Sheasley, grabbed her and began flinging her, but that he continued to fling her despite her three pleas to stop. I believe that the factfinder could properly infer from this that appellant intended to cause bodily injury to Sheasley. I would accordingly find the evidence sufficient to sustain his conviction for simple assault.

Having reviewed appellant's first four issues, I would find them to be meritless.

Appellant contends that the recantation of Goldia Elkin warrants the grant of a new trial. Elkin testified at trial immediately after appellant testified. The thrust of appellant's testimony was that Sheasley bumped him on several occasions while he was dancing with Goldia Elkin and that it was Sheasley who asked him to dance. Appellant testified that he turned from Goldia Elkin and then began dancing with Sheasley. Appellant contends that he did not swing Sheasley on the dance floor. Goldia Elkin testified that Sheasley came up to appellant and punched him on the arm. According to Elkin's testimony at trial, appellant did not dance with Sheasley, but continued dancing with Elkin. Several months later Elkin recanted and testified at a post-trial motions hearing that appellant did leave her on the dance floor and danced with Sheasley. Elkin explained at the hearing that she had received intimidating phone calls and had therefore altered her testimony at trial.

Recanted testimony is generally viewed as exceedingly unreliable and a new trial will be denied where a court is not satisfied that such testimony is true. *Commonwealth v. Hubble*, 314 Pa.Super. 99, 460 A.2d 784 (1983). This

Court will not reverse an order denying a new trial on the basis of recanted testimony absent an abuse of discretion. In its opinion of April 24, 1985 the lower court found the testimony given by Elkin at the post-trial hearing to be contradictory in some instances and somewhat difficult to interpret. The court stated that:

[I]t appears that the testimony of Ms. Elkin at the February 28th hearing may at least be somewhat closer to the truth than the testimony which she offered at trial. . . .

Opinion 4/24/85 at 7. The court went on to find that Elkin's trial testimony was not essential to the guilty verdict and that appellant was not entitled to a new trial based on this recantation. I agree with the trial court. It does not appear clear to me that the court found Elkin's new testimony to be true. I would find no abuse of discretion in the ruling.

Appellant's second issue is that the after-discovered evidence of witnesses at the scene warrants the grant of a new trial. The evidence to which appellant refers is the testimony of witnesses who had been present at the tavern on the night in question, but who had not testified at trial. The testimony was to the effect that these witnesses had been present at the tavern on the night of the incident and they were unaware of the occurrence of any incident or altercation such as the one about which Sheasley testified. A new trial will not be granted on the basis of after-discovered evidence if the evidence was merely cumulative or offered only to impeach credibility. *Commonwealth v. Hubble, supra.* Appellant's own testimony and that of his defense witnesses at trial, was that no altercation or incident occurred between appellant and Sheasley at the tavern. The testimony of these new witnesses is merely cumulative of that trial testimony. I would find that the trial court did not err in refusing to grant a new trial based on this evidence.

Appellant next contends that the conduct of the prosecution in handling this case was so improper as to constitute a denial of due process and equal protection. Specifically,

appellant claims that defense counsel made a request for the names and addresses of prosecution witnesses and had been denied this information, yet the defense was required to disclose the names of its eyewitnesses in the context of the request for a continuance. Appellant correctly draws this Court's attention to his Request for Informal Disclosure or Discovery filed pursuant to Pa.R.Crim.P. 305 A. In the document appellant requested the names and addresses of eyewitnesses from the attorney for the Commonwealth. What appellant fails to mention, and what the record fails to contain, is any pre-trial motion made to the Court requesting this information. Apparently, appellant did not follow his informal request for disclosure with a motion to the court. Rule 305 A provides that:

> When there are items requested by one party which the other party has refused to disclose, the demanding party may make appropriate motion to the court. Such motion shall be made fourteen (14) days after arraignment, unless the time for filing is extended by the court. In such motion the party must set forth the fact that a good faith effort to discuss the requested material has taken place and proved unsuccessful.

Pa.R.Crim.P. 305 A. Subsection B of Rule 305 addresses the issue of eyewitnesses. It provides that:

> if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable:
>
> (a) the names and addresses of eyewitnesses;

Pa.R.Crim.P. 305 B(2). Having failed to file such a pretrial motion I cannot see that appellant is entitled to any relief on this basis. I would affirm the lower court's ruling on this issue.

Finally, appellant contends that he did not have effective assistance of counsel prior to and in the course of trial. A claim of ineffectiveness will not be sustained unless it is

determined that, in light of all the alternatives available to counsel, the strategy actually employed was so unreasonable that no competent attorney would have chosen it. *Commonwealth v. Litzenberger,* 333 Pa.Super. 471, 482 A.2d 968 (1984). Appellant's first claim of ineffectiveness is that his counsel should have obtained a written statement from Goldia Elkin and should have moved for leave to cross-examine her at trial when her testimony was not in accord with her prior oral statements. To have confronted Elkin about her inconsistent testimony through the use of a written statement after motioning to call her for cross-examination, may well have proved disastrous to appellant. While her trial testimony as given, conflicted with that of appellant, her testimony tended to establish not only that no altercation occurred between appellant and Sheasley, but that they never even danced together. It is impossible to determine how Elkin would have responded to the proposed cross-examination. The testimony may well have cast a doubt over appellant's entire case. In light of this risk, I agree with the trial court and I would not find counsel ineffective in this respect.

Appellant contends that counsel erred in excusing the tavern owner, Larry Boyer, from testifying. Boyer was subpoenaed to testify by the defense, but requested permission to leave the trial and was allowed to do so. Appellant also contends that counsel was ineffective for failing to present at trial the testimony of other witnesses who did testify at the post-trial motions hearing. As I have already discussed, the testimony of Boyer and the others present at the tavern would have been cumulative of the testimony actually presented. Their testimony would have established that they were unaware of any incident at the tavern on the night in question. Defense testimony actually presented at trial already attempted to establish that no incident occurred. As such I would find that appellant has failed to establish any ineffective assistance of counsel.

Because I believe the simple assault conviction is supported by sufficient evidence and appellant's other argu-

ments are without merit, I would affirm appellant's judgment of sentence.