## Commonwealth v. Tate

*Donald E. Speice, assistant district attorney,* for the commonwealth.

*Randall C. Rodkey,* for defendant.

SMITH, *J.,* January 11, 1988 — Defendant, Timothy R. Tate, is a teacher employed by the Spring Cove School District. He is charged with simple assault[1] and harassment[2] as a result of a paddling he administered to a student on May 22, 1987, during the course of the school day.

Following a preliminary hearing on July 20, 1987, the district justice found that the commonwealth

---

1. 18 Pa.C.S. §2701.
2. 18 Pa.C.S. §2709.

had established a prima facie case as to both charges and returned this matter to the court of common pleas. Counsel for defendant has filed an omnibus pre-trial motion in which he seeks to quash the information filed by the district attorney of Blair County.[3]

Because no stenographic record of the preliminary hearing is extant,[4] counsel have stipulated that certain testimony was previously adduced, and the court has approved their set of stipulations for purposes of ruling upon the instant motion. By its very nature, this proceeding does not require us to weigh credibility; we need only determine as a matter of law, whether the quantum of evidence presented in the stipulation now of record afford a basis for finding a prima facie case as to simple assault.[5]

It appears that on May 22, 1987, Dennis Newberry was a 13-year-old student in the seventh grade. After a substitute teacher, William Damiano, observed Newberry talking in class to a fellow stu-

---

3. Defense counsel styles his application "motion to quash information." It is, in effect, a traditional habeas corpus motion. "The established and accepted method for testing a finding of a prima facie case pre-trial, within this jurisdiction, has been, by a writ of habeas corpus." *Commonwealth v. Hetherington,* 450 Pa. 17, 331 A.2d 205, 209 (1975). See 42 Pa.C.S. §6501 et seq.

4. Indeed, the lack of a preliminary hearing transcript in this instance works a hardship upon the prosecutor, defense counsel and the court. Yet the economics of judicial administration have thus far precluded the use of court stenographers by our minor judiciary, except where provided and compensated by a party.

5. At the hearing held before us on December 28, 1987, the attorney for the commonwealth agreed with the defense contention that the charge of harassment must fall because there is no evidence to show the specific "intent to harass, annoy or alarm. . . ." 18 Pa.C.S. §2709. We are in accord with counsel's conclusion, and will dismiss the harassment count .

dent, the youth was asked to remain after class so that he could be disciplined. Because school policy did not permit a substitute teacher to administer corporal punishment, Damiano took the student to defendant with the recommendation that he be paddled. According to Newberry's testimony, Tate responded with words to the effect that he had "been waiting for someone to paddle."

Defendant instructed the youth to place his hands on the desk and to stand in a "pat-down" or search position. Once the student had done so, Tate administered a single swat with a paddle measuring 4⅞″ wide, ¾″ thick and approximately 18″ in length. Newberry's testimony is that the blow which caused him to be knocked against the desk, "really hurt."

The student was taken to Nason Hospital the following afternoon at approximately 3:30 p.m., where he was examined by Dr. D. P. Dilling. Newberry contends that he went to the hospital because of pain in his leg, and that he followed the physician's instructions. Dr. Dilling found an "obliquely oriented ecchymosis," i.e., a bruised thigh.[6]

Newberry does not believe that defendant intended to hit him on the leg.

For purposes of the instant motion, it is undisputed that the paddling was administered during the course of the defendant's professional duties and that the bruise resulted from the imposition of that discipline. Defendant contends both that he did not intend to inflict bodily injury and that, in fact, no bodily injury was suffered. That, he argues, compels dismissal of the simple assault charge.

Defendant further contends that 18 Pa.C.S. §509(2),[7] a section of the Crimes Code justifying

6. See joint exhibit A.
7. §509. *Use of force by persons with special responsibility for care, discipline or safety of others.*

the use of certain force by a teacher, affords a basis for dismissal. The commonwealth does not dispute the applicability of section 509 to this case, but argues that it provides an affirmative defense which requires resolution of the justification issue by a finder of fact.[8]

Because a preliminary hearing is intended to protect an individual's right against an unlawful arrest and detention, the commonwealth must carry the burden at that stage by establishing at least a prima facie case that a crime has been committed and that the accused is probably the one who committed it. *Commonwealth v. Prado*, 481 Pa. 485, 393 A.2d 8 (1978); *Commonwealth v. Mullen*, 460 Pa. 336, 333 A.2d 755 (1975). As we have framed the issue previously when habeas corpus relief has been sought:

"The question presented to this court is whether, the evidence received at the preliminary hearing

---

"The use of force upon or toward the person of another is justifiable if:

• • • • •

"(2) The actor is a teacher or person otherwise entrusted with the care or supervision for a special purpose of a minor and:

"(i) the actor believes that the force used is necessary to further such special purpose, including the maintenance of reasonable discipline in a school, class or other group, and that the use of such force is consistent with the welfare of the minor; and

"(ii) the degree of force, if it had been used by the parent or guardian of the minor, would not be unjustifiable under subparagraph (1)(ii) of this section."

8. Counsel for defendant filed a memorandum on the day of hearing. The court afforded to the attorney for the commonwealth the right to file a memorandum, if desired, but directed that we be advised of the commonwealth's intention that day. We have received neither communication nor memorandum from the district attorney's office since that time.

presented sufficient probable cause to believe that the defendant committed the offenses for which he is charged. In order to answer this question in the affirmative, this court must find that both the quantity and quality of evidence presented there was 'such that if presented at trial in court, and accepted as true, the judge would be warranted in allowing the case to go to the jury.' " *Commonwealth ex rel. Scolio v. Hess,* 149 Pa. Super. 371, 27 A.2d 705 (1942). *Commonwealth v. David E. Roessing,* C. A. No. 362 of 1985, slip op. dated June 24, 1985, pages 2-3.

Accordingly, we review the record before us by applying the same standard as we would in ruling upon a motion for demurrer at trial. In doing so, we have determined that the charge of simple assault cannot stand.

The commonwealth contends that section 509, invoked by defendant, is inapplicable to the instant motion. That provision, the prosecutor argues, establishes an affirmative defense which *necessarily* creates a question for resolution by a finder of fact. Although we consider the commonwealth's analysis on this issue to be flawed, we do not believe that section 509 affords a basis, *when applied to the record before us,* for granting the relief sought by defendant.

Clearly, section 509(2) is a justification provision intended to insulate from criminal liability teachers and other persons entrusted with the care or supervision of a minor for a special purpose where such persons apply appropriate force for disciplinary purposes. We are aware of no decisional authority in this jurisdiction which has applied section 509(2); however, we find persuasive the Model Penal Code Comment to this subsection which states that:

"The criterion should be, we think, the actor's belief that the force is necessary to further the special

purpose of his trust, including but not limited to the maintenance of reasonable discipline in a school, class or group; that he believes the force consistent with the welfare of the minor; and, finally, that it does not exceed in degree the force that a parent or guardian may justifiably employ." Toll, *Pennsylvania Crimes Code Annotated*, §509, p. 210.

It is apparent to us from the language of the statute, and consistent with the foregoing commentary, that section 509(2) does provide an affirmative defense. However, it is equally clear that:

"Evidence raising the issue of an affirmative defense may come from *any* source including the defendant's evidence, defense cross-examination of commonwealth's witnesses, the commonwealth's cross-examination of defense witnesses, or the commonwealth's case-in-chief." Wasserbly, *Pennsylvania Criminal Practice*, §26.02 (footnote omitted) (emphasis added). See *Commonwealth v. Haywood*, 464 Pa. 226, 346 A.2d 298, 301 fn. 7 (1975).

The commonwealth is mistaken, then, when it suggests that an affirmative defense, to be invoked, somehow places upon defendant a burden of going forward with evidence. Such evidence may derive from any source and may be adduced during any phase of the proceeding.

Nevertheless, defense reliance upon the terms of section 509(2) is misplaced. We are satisfied that the record before us does not afford a basis to dismiss through application of that statute.

It is agreed that defendant was a teacher and that Newberry was a minor at the time of the incident. Yet the question for resolution by this court is not only whether the force applied was appropriate. The question is whether the defendant *believed* that the force he used was necessary to maintain reasonable

discipline. After reviewing the record before us, we have determined that question to be a matter within the province of the finder of fact. As noted, supra, "[T]he weight and credibility of the evidence are not factors at this stage . . . ." *Commonwealth v. Wojdak*, 502 Pa. 359, 466 A.2d 991, 997 (1983).

Accordingly, our analysis centers upon the requirement that the commonwealth "present evidence with regard to each of the *material elements* of the charge . . . ." *Commonwealth v. Harvin*, 346 Pa. Super. 575, 500 A.2d 98, 101 (1985) (emphasis in original). We conclude that the commonwealth has failed to meet this requirement.

Section 2701(a) of the Crimes Code provides that, "A person is guilty of assault if he: (1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another . . . ." The term "bodily injury" is defined as an "impairment of physical condition or substantial pain." 18 Pa.C.S. §2301.

Surprisingly, there is a paucity of caselaw in this jurisdiction which construes the term "bodily injury." Recently, however, Superior Court concluded that evidence tending to show that a defendant grabbed a woman and began to dance violently with her, thereby causing bruises and slight cuts on her arms, with resultant discomfort to her arms and right knee, was insufficient to establish either "physical impairment" or "substantial pain." *Commonwealth v. Kirkwood*, 360 Pa. Super 270, 520 A.2d 451 (1987), alloc. denied ____ Pa. ____, 528 A.2d 955 (1987). Writing for the majority, Judge Wieand declared that

"The assault section of the Crimes Code was intended to protect and preserve one's physical well-being and was not intended to prevent temporary

hurts resulting from trivial contacts which are a customary part of modern day living." *Kirkwood,* supra, 520 A.2d at 454.

The matter before us is not a referendum on either the propriety or advisability of corporal punishment. The General Assembly has passed upon that controversial issue by investing teachers in public schools with "the same authority as to conduct and behavior over the pupils . . . as the parents, guardians or persons in parental relation to such pupils may exercise over them." Act of March 10, 1949, P.L. 30, art. XIII, §1317, as amended July 25, 1963, P.L. 315, §1; 24 P.S. §13-1317. See *Commonwealth v. Allen,* 98 Dauphin 473 (1976), (teacher not guilty of harassment where he applies single swat with paddle to fourth-grade pupil). Corporal punishment is, therefore, a "customary part of modern-day living."

Although not binding upon us, we find the case of *State v. Hoover,* 5 Ohio App. 3d 207, 450 N.E. 2d 710 (1982), instructive for purposes of our analysis. There, the court of appeals of Ohio reversed the assault conviction of an experienced teacher, albeit for reasons unrelated to the issues presented in the instant matter. The Ohio court cited with approval the following discussion by the trial judge:

" '[L]et there be no misunderstanding on the concept of "reasonable corporal punishment." It exists now in Ohio as evidenced by Ohio Revised Code 3319.41, it existed prior to the adoption of that statute as evidenced by *Quinn v. Nolan,* [7, Dec. Rep. 585 (1879)], and it exists as part and parcel of the American concept of private and public education. This court, speaking as both trier of fact and former pupil, has no quarrel with that timeless concept. . . . Discipline and learning are inseparable, one cannot exist without the other.' "

We find Ohio's public policy on this issue to be consistent with that of this commonwealth, and its philosophical underpinnings to be sound. Indeed, there can be no order without discipline, and no learning in the absence of order.

The evidence discloses a teacher administering corporal punishment in the course of his duties by applying a single swat to the posterior of a mischievous pupil. The prosecution neither contends that the pupil's conduct failed to warrant corporal punishment nor argues that the defendant exceeded his authority in administering it. All the commonwealth has to point to is a bruise, a condition which young Mr. Newberry and his family apparently viewed with such severity that it took them at least 24 hours to repair to a local emergency room.

Nor do we attach significance, legal or otherwise, to the pupil's statement that the paddling "really hurt." A paddling is not a commendation, it is a punishment. As such, its purpose may properly be to cause either physical or psychic discomfort, or both. To assume that our Legislature has authorized reasonable corporal punishment, while at the same time sanctioning prosecution for simple assault of a teacher who causes some pain by administering it, would be absurd. "[T]he General Assembly does not intend a result that is absurd . . . ." 1 Pa.C.S. §1922(1).

We emphasize that our decision in this case is necessarily limited to the facts before us. By no means are we declaring "open season" on errant pupils in the public schools. Yet we are mindful that English derives its term "discipline" from the Latin *disciplina*, which means "teaching, learning." If our teachers are to teach, and if our students are to learn, order and decorum must be maintained.

To allow the instant prosecution to proceed to trial would work an injustice to this defendant. It could also profoundly undermine disciplinary efforts throughout the school district where defendant is employed, and elsewhere, by discouraging teachers from administering reasonable corporal punishment, and thereby encouraging pupil misconduct. Such dire consequences are to be steadfastly avoided.

## ORDER

And now this January 11, 1988, for the reasons set forth in the foregoing opinion, the motion to quash is granted in the following respects:
(1) the charge of simple assault is dismissed;
(2) the charge of harassment is dismissed; and
(3) the defendant is discharged.
It is so ordered.