**Commonwealth v. Feerrar**

*Anthony Ciuca*, for Commonwealth.
*Bradley S. Hillman*, for defendant.

LOVECCHIO, *J.*, May 30, 2014—By information filed on February 14, 2014, defendant is charged with seven counts of simple assault, one count of Endangering the Welfare of Children and one count of Recklessly Endangering Another Person. The charges arise out of an incident that allegedly occurred on June 28, 2013. The defendant is alleged to have hooked up a barrel train consisting of 6 cars to an ATV that he "operated in a reckless manner, causing it to overturn" with six people on board including a mother and five juveniles. Allegedly, moments before the crash, the occupants pleaded for him to slow down, but he ignored those pleas and all of the barrels overturned as he made a sharp left-hand turn.

Defendant filed a petition for habeas corpus on March 18, 2014, alleging that the evidence was insufficient to demonstrate that any "crime was committed." The defendant further alleged that the Commonwealth failed to establish the required element of bodily injury "and the defendant's culpability and duty."

A hearing on defendant's petition was held before the court on May 13, 2014. The Commonwealth introduced in evidence as Commonwealth exhibit 1, a transcript of the January 29, 2014 preliminary hearing including its exhibits. As well, the Commonwealth called as witnesses Frederick Wilke and William Black, Jr. Finally, the Commonwealth introduced in evidence as Commonwealth exhibit 2, the operation manual for the barrel train and as Commonwealth exhibit 3, a video disc and transcript of Trooper Erik

Barlett's interview with the defendant on July 6, 2013 as recorded on Trooper Barlett's in-car camera. During the preliminary hearing, defendant introduced certain exhibits and during the hearing on defendant's petition for habeas corpus, defendant introduced defendant exhibit 4, additional paperwork regarding "the barrel train" from Wilke Enginuity, Inc.

The defendant is the owner of Happy Acres Resort in Lycoming County. Prior to June 28, 2013, defendant purchased 6 barrel trains from Wilke Enginuity, Inc. Frederick Wilke is the owner of Wilke Enginuity, Inc. and the developer of the barrel trains. Barrel trains are essentially carved out barrels with seats and pretend steering wheels secured over a metal frame with rubber wheels, which attach to each other to form a train-like vehicle. The barrel train, as it is referred to, is then pulled by a motorized vehicle. It is similar to an amusement park ride.

The barrel train was delivered to the defendant by Mr. Black in mid-June of 2013. As the barrel train was being delivered, Mr. Black gave to the defendant the operation manual. Defendant admitted to Trooper Barlett that prior to the incident, he obtained the manual from Wilke Enginuity. The defendant took it, laid it on the grass and subsequently directed his wife to take it inside to the office.

The operation manual was developed by Mr. Wilke, in conjunction with officials of the Pennsylvania Department of Agriculture, Bureau of Ride and Measurement Standards.

The operation manual includes a section entitled "Safety." It directs that hills "ALWAYS" be avoided, that driving across a slope must be avoided, that any hill

exceeding a slope of more than zero degrees is "considered unsafe", that ascending or descending a hill is "considered unsafe", that overturning is a concern "especially on wet surfaces", and that rider's hands and arms must remain inside the cart at all times. Another portion of the operation manual entitled "operation" notes that the maximum speed is five mph and that the operator of the tractor is a key component in the safety of the "barrel train ride."

On the date in question, June 28, 2013, at approximately 6:00 p.m., the defendant hooked up the six-barrel trains to an ATV. For approximately an hour or so, he operated the barrel train ride on the premises. Riders included some of the alleged victims.

Amy Haines, an adult individual, was vacationing at Happy Acres with her family on June 28, 2013. It had rained earlier in the day. At approximately 7:00 p.m., she, her one minor daughter and her daughter's minor friend, agreed that the girls would ride the barrel train. The girls went for at least one ride before Ms. Haines got on the ride with them. The defendant drove all three to the lodge area where three additional minors joined the ride.

The defendant indicated that he was going to drive the train "up to the camp office." In sequence starting with the first cart behind the ATV being driven by defendant and pulling the barrel train were: Britney, then age 17; Breanna, then age 7; Julia, then age 11 and Ms. Haines' daughter; Ms. Haines; Levi, then age 9 and Ms. Haines' son, and finally Tristan, then age 12.

The defendant drove the train through a few mud puddles and then up to the camp office. The ride, however then continued down a hill, "the first hill they were going down", going "too fast", "really fast", "really, really

fast" and/or "too fast for conditions", and then around a corner when the carts started "teetering." Some of the riders, apparently enjoying the ride, had their hands and arms up in the air out of the carts. Everyone then started screaming, screaming for the defendant to stop but the defendant kept "going for a while." The train then tipped over, injuring the passengers. The defendant did not stop for approximately 30 to 40 yards from where it first started tipping. Following the crash, the defendant "left the area because he felt that he was afraid because...the other family members that were upset."

According to the defendant, he was traveling down a hill, "going really slow", driving through "a little puddle" and "going around a corner" when he looked back and saw that the train "tipped over."

According to the testimony, Breanna suffered a really bad headache "that hurt", Julia suffered a large burn to her right thigh from her knee to her hip, and multiple other abrasions "that really, really hurt" at the hospital while being cleaned. Levi suffered a gash in his hip, scuffed elbows and multiple abrasions across his hips. As well, his hands were "ripped open." Tristan scraped up his knee which "kind of hurt." He went to the hospital where it was cleaned. Brittney did not testify and no evidence was presented regarding injuries that she may have suffered. Amy Haines suffered a broken left ankle; a large puncture wound in her left ankle; bruised ribs; a concussion; lacerations to her head and forehead; some of which required staples and/or stitches; and multiple abrasions.

"A petition for writ of habeas corpus is the proper vehicle for challenging a pretrial finding that the Commonwealth presented sufficient evidence to establish

a prima facie case." *Commonwealth v. Carbo*, 822 A.2d 60, 67 (Pa. Super. 2003) (citing *Commonwealth v. Kohlie*, 811 A.2d at 1013 (Pa. Super. 2012)). "While the weight and credibility of the evidence are not factors at this stage, and the Commonwealth need only demonstrate sufficient probable cause to believe that the person charged has committed the offense, the absence of evidence as to the existence of a material element is fatal." *Commonwealth v. Wojdak*, 466 A.2d 991, 997 (Pa. 1983).

The Commonwealth must present sufficient evidence that a crime has been committed and that the accused is the one who probably committed it. *Commonwealth v. Mullen*, 333 A.2d 755, 757 (Pa. 1975). The evidence must demonstrate the existence of each of the material elements of the crimes charged. *Wojdak, Id.* at 996-97. Further, when deciding whether a prima facie case has been established, the court must view the evidence in the light most favorable to the Commonwealth and consider all reasonable inferences based on that evidence which could support a guilty verdict. *Commonwealth v. McCullough*, 86 A.3d 901, 905 (Pa. Super. 2014), quoting *Commonwealth v. Landis*, 48 A.3d 432, 444 (Pa. Super. 2012); *see also Commonwealth v. Santos*, 583 Pa. 96, 876 A.2d 360, 363 (2005).

Counts 1, 2, 3, 4, 6 and 7 charge defendant with simple assault in violation of 18 Pa. C.S.A. §2701 (a) (1). With respect to the named victims, the counts relate as follows: 1 — Breanna, 2 — Julia, 3 — Levi, 4 — Tristan, 6 — Brittney, and 7 — Ms. Haines. A person is guilty of simple assault if he "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another." 18 Pa. C.S.A. § 2701 (a) (1).

The defendant first contends that there is insufficient evidence to support a prima facie case with respect to the bodily injury element.

"Bodily injury" is defined by statute as "[i]mpairment of physical condition or substantial pain." 18 Pa. C.S.A. § 2301. While this definition is not particularly instructive, numerous cases have defined the boundaries of what constitutes bodily injury.

On one end of the spectrum, it is not a temporary hurt resulting from trivial contact. *Commonwealth v. Kirkwood*, 360 Pa. Super. 270, 520 A.2d 451, 454 (1987). As well, it has been found not to include pushing, shoving, slapping, elbowing, hair pulling and perhaps even punching and kicking that frequently occurs between siblings or other members of the same family. *Interest of J.L.*, 327 Pa. Super. 175, 475 A.2d 156, 157 (1984). These types of hurts have been described as a "customary part of modern day living." *In Re: M.H.* 758 A.2d 1249, 1252 (Pa. Super. 2000), citing *Kirkwood*, 520 A.2d at 454.

On the other end of the spectrum, bodily injury has been found where bruising has occurred, pain has been experienced for a period of time or one was "almost" knocked unconscious. *In Re: M.H.*, 758 A.2d at 1252; *Commonwealth v. Adams*, 333 Pa. Super. 312, 482 A.2d 583, 587 (1984). In order for there to be bodily injury, however, the victim need not seek or obtain medical treatment or miss work. *In Re: M.H.*, *supra*, citing *Commonwealth v. Richardson*, 431 Pa. Super. 496, 636 A.2d 1195, 1196 (1994).

In considering the testimony, the court concludes that for prima facie purposes, the Commonwealth has established the requisite bodily injury with respect to counts 1, 2, 3

and 7 but not 4 or 6. The hurt sustained by the alleged victims was well beyond temporary hurt from trivial contact. The pain, contusions, abrasions, lacerations and more serious injuries such as the concussion and broken ankle, under the circumstances of the alleged assault, constitute bodily injury. On the other hand, there was no testimony regarding count 6 — Breanna, and with respect to count 4 — Tristan, his scraped knee only "kind of hurt."

The defendant further argues that his conduct was not intentional, knowing or reckless. The Commonwealth concedes that it is proceeding only on the reckless element.

"A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation." 18 Pa. C.S.A. § 302 (b) (3).

The court concludes that the Commonwealth has presented sufficient evidence to establish a prima facie case against the defendant on the charges of simple assault by recklessly causing bodily injury to the alleged victims.

The defendant was at the very least constructively aware of the manufacturer's recommendations and directives with respect to the operation of the barrel train. The defendant knew that the train should be pulled only on a level surface and at a speed no greater than five miles per hour. He knew that hills always had to be avoided and that descending a hill was unsafe. He also knew that

overturning was a concern especially on wet surfaces. Finally, he was aware that the safety of the passengers depended on his driving carefully and properly.

Ignoring the directives from the manufacturer, the defendant traveled at speeds too fast for conditions, traveled down a hill and slope, drove through a puddle and took a sharp turn, all causing the train to overturn. As well, he failed to supervise the riders by making sure they didn't put their hands and arms up. He also failed to properly observe the ride. He drove more than a third of a football field after the riders started teetering.

Moreover, and even in the absence of his knowledge of the manufacturer's suggestions, the defendant knew that of his six passengers, five were minors, two of whom were just 7 and 8 years old. He had operated the barrel train previously and it can be assumed that he was aware of its lack of stability if speed was increased, sharp turns were made or it traveled down hills.

Perhaps determinatively, while driving at a significant speed down a hill, through a puddle and around a curve, the defendant ignored the pleas of the riders to slow down and/or stop.

With respect to count 8, recklessly endangering another person, the defendant argues that the evidence is insufficient for prima facie purposes to conclude that defendant recklessly engaged in conduct which placed or may have placed the alleged victims in danger of death or serious bodily injury. The court cannot agree.

Indeed, and as set forth above, the defendant's conduct under all of the circumstances was prima facie reckless. Moreover, it placed the riders in danger of death or serious

bodily injury. None of them wore protective clothing such as helmets or jackets. The surface on which they were being driven was hard, wet and covered with grass and/or dirt. The speed, the slope, the wet surface and turning were such that it was likely the train would overturn and expose all of the riders to being thrown out and onto the hard surface and/or even dragged along until the defendant stopped. The riders are fortunate that they were not killed or more seriously injured.

With respect to endangering welfare of children, count 5, the defendant argues that he did not violate a duty of care, protection or support. In order to be found guilty of such an offense, the Commonwealth would need to prove that the defendant was a guardian or other person supervising the welfare of children under the age of 18 and that he knowingly endangered the welfare of that child or children by violating a duty of care, protection or support. 18 Pa.C.S.A. § 4304.

The "duty of care protection or support" language as used in the statute is not "esoteric." Rather, it is "easily understood and given content by the community at large." *Commonwealth v. Mack*, 467 Pa. 613, 359 A.2d 770, 772 (1976).

In order to sustain a conviction for endangering the welfare of children, the Commonwealth must establish three elements. First, the defendant was aware of his or her duty to protect the child. Second, the defendant was aware that the child was in circumstances that could threaten the child's physical welfare. Third, the defendant either failed to act or took action so lame or meager that such actions could not reasonably be expected to have protected the child's welfare. *Commonwealth v. Martir*, 712 A.2d 327,

328-29 (Pa. Super. 1998).

Clearly, the Commonwealth has presented prima facie evidence to support all of these elements. By agreeing to drive the train, the defendant was aware of his duty to protect the children riding in it. Clearly, he was aware that the children were in circumstances that could threaten their physical welfare should he drive in such a manner as to cause an accident. He failed to drive in a proper manner so as to prevent the accident from occurring. As well, he proactively engaged in conduct which caused the injuries.

While the defendant vigorously argues that his conduct was at the very most negligent, the facts and inferences viewed in the light most favorable to the Commonwealth support a prima facie showing of reckless conduct. Defendant consciously disregarded the substantial risk that his passengers might be seriously injured. His speed, driving through a puddle, driving down a hill, allowing the riders to put their hands and arms out of the carts, ignoring their pleas to stop, and continuing to drive after the carts teetered and then tipped over demonstrates a gross deviation from the standard of conduct that a reasonable person would have observed under similar circumstances.

The court understands defense counsel's arguments that the defendant may not have heard the yells or screams or understood that they were screams of fear or danger instead of squeals of delight, but these are issues for the jury. Furthermore, to credit defense counsel's arguments at this stage of the proceedings would be tantamount to viewing the evidence in the light most favorable to the defendant, instead of the Commonwealth.

## ORDER

And now, this 30th day of May 2014, following a hearing and argument, defendant's petition for habeas corpus is denied.