J-S18039-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| v. | : | |
| | : | |
| NATHANIEL ADDERLY, | : | |
| | : | |
| Appellant | : | No. 553 MDA 2015 |

Appeal from the Judgment of Sentence February 24, 2015
in the Court of Common Pleas of Luzerne County
Criminal Division, at No(s): CP-40-CR-0002420-2013

BEFORE:    BOWES, LAZARUS, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:            **FILED MARCH 23, 2016**

Nathaniel Adderly (Appellant) appeals from the February 24, 2015 judgment of sentence of 30 to 60 months of incarceration following his non-jury convictions for two counts of aggravated assault.  We affirm.

The facts underlying Appellant's conviction took place on October 20, 2012, while Appellant was an inmate at the Luzerne County Correctional Facility.  The trial court summarized the Commonwealth's evidence as follows.

> Correctional Officer [Kristofer] Renfer testified credibly under oath that while in line to go out to the yard, [Appellant] failed to adhere to direct orders and stated, "Who the fuck do you think you're talking to; I will fuck you up."  [Appellant] positioned himself in an aggressive boxer stance with his fists up which caused CO Renfer justified concern.  CO Renfer managed to hit a nearby red button which is a direct duress alarm line. This alarms sends a signal to a central control where there are three to four officers and the alarm is only hit when an officer needs immediate assistance on a block.

---

* Retired Senior Judge assigned to the Superior Court.

After the alarm was sounded and prior to CO Helfrich's arrival [Appellant] stated to CO Renfer, "It's on now, mother fucker," grabbed ahold of CO Renfer, was on top of him swinging his arms, punching him in the chest, kicking, screaming violently and thrashing around. CO Renfer testified that he suffered injuries to his shoulder and had bruising on his chest, arms, and left hip and sought medical treatment that night at the Wilkes-Barre General Hospital. Moreover, CO Renfer credibly testified that the altercation seemed like a lifetime, was an intense situation and extremely scary. Moreover, CO Renfer specifically recalls CO Helfrich and CO Schrader assisting in the ultimate restraint of [Appellant] but only after an intense struggle as [Appellant] became more and more combative, fighting the whole time, tooth and nail.

Luzerne County Correctional Facility Officer Helfrich testified under oath before the court. CO Helfrich corroborated that he heard yelling and screaming and determined that CO Renfer needed assistance. CO Helfrich personally observed [Appellant's] refusal to listen to direct orders to "cuff up" which is a command to turn around and allow a CO to restrain an inmate. CO Helfrich credibly testified that he made a determination that [Appellant] needed to be "taken down" meaning down to the floor and away from CO Renfer. [Appellant] would not allow CO Helfrich to restrain him, kept refusing and began throwing arms, elbows, and doing anything he could to get the COs away from him and there were multiple strikes by [Appellant] upon the corrections officers.

Witness/victim Luzerne County Correctional Facility Officer Charles Schrader testified before the Court. CO Schrader corroborated the testimony of CO Renfer that he received and responded to an "all available" alarm call to the second floor. When CO Schrader arrived, he personally observed CO Renfer and [Appellant] in an altercation, locked up in each other's shirts. CO Schrader also attempted to take [Appellant] to the floor, [Appellant] resisted and was throwing elbows at the guards trying to cuff him; namely, CO Schrader, CO Renfer and CO Helfrich. As a result of [Appellant's] conduct, CO Schrader hit his head on the wall during the altercation and suffered a concussion.

Trial Court Opinion, 5/21/2015, at 3-5 (citations omitted).

Based upon this evidence, the trial court convicted Appellant of two counts of aggravated assault on January 7, 2015. Following a presentence investigation, Appellant was sentenced as detailed above. Appellant timely filed a notice of appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant argues that the evidence was insufficient to support the verdict.[1] Appellant's Brief at 4. We consider Appellant's challenge pursuant to the following standard.

> [O]ur standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

---

[1] In his statement of questions presented, Appellant specifies that his claim is that there was "no competent medical evidence presented to support the existence of bodily injury[;] only hearsay evidence from alleged victims[; and] no video evidence regarding actual alleged assaults even though there were security cameras in the hallways of the correctional facility." Appellant's Brief at 4 (numbers and some capitalization omitted). However, in the argument portion of his brief, Appellant fails to make any arguments regarding hearsay or the failure to produce security videos, let alone to provide authority to support such claims. We shall limit our review to the issue developed by Appellant in his brief, namely whether the evidence offered at trial established all of the elements of aggravated assault. *See*, *e.g.*, *Winklespecht v. Pennsylvania Bd. of Prob. & Parole*, 813 A.2d 688, 691 n.1 (Pa. 2002) (limiting review to issues developed in brief).

***Commonwealth v. Pettyjohn***, 64 A.3d 1072, 1074 (Pa. Super. 2013) (internal quotations and citations omitted). The Commonwealth may sustain its burden by means of wholly circumstantial evidence, and we must evaluate the entire trial record and consider all evidence received against the defendant. ***Commonwealth v. Markman***, 916 A.2d 586, 598 (Pa. 2007).

Appellant was convicted of violations of subsection 2702(a)(3) of the crimes code, which provides in relevant part: "A person is guilty of aggravated assault if he … attempts to cause or intentionally or knowingly causes bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c), in the performance of duty…." 18 Pa.C.S. § 2702(a)(3). Subsection (c) includes an "[o]fficer or employee of a correctional institution, county jail or prison…." 18 Pa.C.S. § 2702(c)(9). "Bodily injury" is defined as "impairment of physical condition or substantial pain." ***Commonwealth v. Rahman***, 75 A.3d 497, 501 (Pa. Super. 2013) (quoting 18 Pa.C.S. § 2301).

"[I]n a prosecution for aggravated assault on a [corrections] officer[,] the Commonwealth has no obligation to establish that the officer actually suffered a bodily injury; rather, the Commonwealth must establish only an **attempt** to inflict bodily injury, and this intent may be shown by circumstances which reasonably suggest that a defendant intended to cause injury." ***Rahman***, 75 A.3d at 501 (internal quotation marks and citation omitted; emphasis in original).

Appellant contends that the Commonwealth's evidence showed neither an attempt by Appellant to cause bodily injury nor the suffering of actual bodily injury by either officer. Appellant insists that there was no evidence of intent necessary for an attempt because there was no indication that Appellant took "any steps toward attacking either officer that demonstrated intent, as the alleged injuries were committed during [the officers'] attempts to take down [Appellant]." Appellant's Brief at 11. Further, Appellant maintains that there was no evidence that either officer actually suffered bodily injury within the meaning of the statute because there "was no testimony that any treatment was required, that either officer missed work, or that they were unable to perform certain functions like dressing or walking for even a day or two as a result of the scuffle." *Id.* at 18.

In support of his argument, Appellant relies upon **Commonwealth v. Kirkwood**, 520 A2d 451 (Pa. Super. 1987). The facts underlying the conviction in **Kirkwood** are as follows.

> Paula Sheasley testified that on the evening of August 11, 1984, she, along with her husband, her sister, and her brother-in-law, went to the Greendale Tavern in Cowanshannock Township, Armstrong County, to dance and to get something to eat. At approximately 1:30 a.m. on the following morning, she observed that Kirkwood was also at the tavern. Sheasley was a correctional officer at the Armstrong County Prison, and she knew Kirkwood as a former inmate who was then on parole. Later, while she was dancing a fast dance with the other members of her party, she said, Kirkwood had approached her, had grabbed her by the arm and had begun to swing her violently around the dance floor. Sheasley said that she had pleaded with Kirkwood to stop because he was hurting her, but that he had continued to swing her until her husband

- 5 -

intervened. The incident, she said, lasted approximately forty seconds and left her with bruises and cut marks on her arms. As a result, she testified, she suffered pain in her arms and her right knee for a short period of time thereafter.

*Kirkwood*, 520 A.2d at 452-453. Kirkwood was convicted of simple assault under 18 Pa.C.S. § 2701(a)(1), which provided that a person is guilty of assault if he or she attempted to cause or intentionally, knowingly or recklessly caused bodily injury to another.[2] After discussing at length the meaning of the term "bodily injury," this Court held that the evidence was insufficient to sustain Kirkwood's conviction:

> In the instant case, [Kirkwood's] uninvited attentions and violent dancing, according to the victim, caused bruises and slight cuts on her arms, and her right knee and arms hurt as a result of the manner in which appellant swung her during the dance. There was no evidence that she had consulted a physician or that she had lost time from work. We conclude that this evidence was insufficient to establish either the "physical impairment" or the "substantial pain" which is necessary to prove the crime of criminal assault as defined in 18 Pa.C.S. § 2701. Temporary aches and pains brought about by strenuous, even violent, dancing are an inadequate basis for imposing criminal liability upon a dance partner for assault. Appellant's invitation to the dance, even if uncivil and harassing, was not assaultive within the meaning of the statute.

*Id.* at 454. Notably absent from the Court's opinion is any discussion of whether Kirkwood attempted to cause bodily injury.

---

[2] A conviction for aggravated assault against an officer of the Commonwealth under § 2702(a)(3) and a conviction for simple assault under § 2701(a)(1) both require proof that the defendant caused or attempted to cause bodily injury.

The instant case is more analogous to ***Commonwealth v. Brown***, 23 A.3d 544, 560 (Pa. Super. 2011), than to ***Kirkwood***. In ***Brown***, this Court offered the following analysis.

> At trial, Officer Schiazza testified that when he attempted to handcuff Brown, Brown pulled away, threw Officer DeBella to the ground, and ran away. Officer Schiazza further testified that after he tackled Brown, Brown struggled violently with him, and that as Brown flailed his arms he struck the officer repeatedly on the arm, shoulder and mouth, causing him to have a swollen lip. Whether the officer's swollen lip constitutes a "bodily injury" for purposes of section 2702(a)(3) is irrelevant, since in a prosecution for aggravated assault on a police officer the Commonwealth has no obligation to establish that the officer actually suffered a bodily injury; rather, the Commonwealth must establish only an attempt to inflict bodily injury, and this intent may be shown by circumstances which reasonably suggest that a defendant intended to cause injury. It was within the jury's province to find that Brown, by throwing Officer DeBella to the ground and then striking Officer Schiazza repeatedly by wildly flailing his arms as he resisted arrest, intended to cause injury to the officers.

***Brown***, 23 A.3d at 560 (citations omitted).

Similarly, the trial court noted the following regarding Appellant's intentions to harm the COs:

> [Appellant] was an incarcerated inmate within a correctional facility not adhering to repeated clear orders to "cuff up." Rather, [Appellant] boldly announced to CO Renfer that he was going to "fuck him up" and that it is "now on [m]other [f]ucker."[3] Those words were immediately followed by the overt physical manifestation of [Appellant] taking a most aggressive boxer-like stance raising his fists. Thus, first came the words where we get a glimpse of [Appellant's] subjective frame of mind, then comes the action of a fighting stance with

---

[3] Although it is a distinction without a difference, the trial transcript records CO Renfer's testimony as being that Appellant said "It's on now, mother fucker." N.T., 1/7/2015, at 14, 23.

- 7 -

fists raised. CO Renfer clearly and reasonably realized the gravity of the situation by sounding the duress alarm; a device only used when a matter cannot be handled by CO alone. All three Correctional Officers, Renfer, Helfrich and Schrader, while in their capacity as Correctional officers, corroborated that [Appellant] failed to comply with repeated orders, and [Appellant] was on top of CO Renfer, punching, swinging, throwing elbows, and thrashing and striking all of the corrections officers with apparent impunity.

Trial Court Opinion, 5/21/15, at 7.

These determinations as to Appellant's intent are supported by the record.[4] Appellant's actions were similar to those of the defendant in **Brown**. N.T., 1/7/2015, at 14 (indicating that Appellant's "aggression was insane" in his "thrashing around, screaming violently, kicking his legs"). Based upon **Brown**, we agree that the evidence was sufficient to prove that Appellant at least **attempted** to cause bodily injury to COs Renfer and Schrader, regardless of whether the COs actually suffered what amounts to a "bodily injury" under section 2702(a)(3).

Judgment of sentence affirmed.

---

[4] Appellant argues that CO Renfer's testimony about his interactions with Appellant before the other COs arrived is contradicted elsewhere in the record. Appellant's Brief at 15. However, the trial court found CO Renfer's testimony on this point to be credible. Trial Court Opinion, 5/21/2015, at 3. This Court will not disturb the fact-finder's credibility determinations. **Commonwealth v. Page**, 59 A.3d 1118, 1130 (Pa. Super. 2013) ("Questions concerning inconsistent testimony ... go to the credibility of the witnesses. A determination of credibility lies solely within the province of the factfinder. Moreover, any conflict in the testimony goes to the credibility of the witnesses and is solely to be resolved by the factfinder." (internal quotation marks and citations omitted)).

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/23/2016