**IN the Interest of M.H., a minor.**

**Appeal of M.H.**

Superior Court of Pennsylvania.

Submitted May 22, 2000.

Filed Aug. 24, 2000.

Barbara L. Krier, Public Defender, York, for appellant.

Hugh S. Rebert, Asst. Dist. Atty., York, for Com., participating party.

Before: KELLY, J., TODD, J., and CERCONE, President Judge Emeritus.

TODD, J.:

¶ 1 M.H., a juvenile, appeals the disposition order stemming from her adjudication of delinquency for simple assault.[1] Specifically, M.H. challenges whether grabbing and shoving an educational aide, resulting in bruises on the aide's arm, constitutes "bodily injury." After a thorough review of the record, we affirm.

¶ 2 On June 10, 1999, M.H., then a 16–year–old student at Susquehannock High School in York County, Pennsylvania, was involved in a yelling match in the school cafeteria with her brother and another male student. As the argument escalated to grabbing and shoving, culminating in Appellant lunging at the other student, Gail Leann Shelley, an emotional support instructional aide, along with Brian Conner, a science teacher, intervened to separate the students. Shelley turned M.H. around and asked her to come to the office. While walking out, M.H. grabbed Shelley's arm and shoved her against the wall saying, "Back off." She then followed Shelley to the principal's office. The force of M.H.'s grabbing Shelley's arm left finger marks, red and bruised, for approximately four days. Shelley filled out an incident report, but did not report any injuries to the police, received no medical treatment, and continued her work routine otherwise uninterrupted. M.H. was later charged as a juvenile with aggravated assault[2] and simple assault.

¶ 3 At an adjudicatory hearing on September 14, 1999, the learned trial judge, Honorable Emanuel Cassimatis, Senior Judge, determined that the Commonwealth failed to prove aggravated assault, a felony of the second degree, because an intentional act had not been shown. The court, however, found M.H. guilty of simple assault, a misdemeanor of the second degree, for recklessly inflicting bodily injury. On appeal, M.H. argues that the evidence was insufficient to prove simple assault because Shelley's injury did not constitute "bodily injury" under 18 Pa. C.S.A. § 2701(a)(1).

■ ¶ 4 The test for determining the sufficiency of the evidence is "whether, viewing all evidence admitted at trial, together with all reasonable inferences therefrom, in a light most favorable to the Commonwealth as verdict winner, the trier of fact could have found that the defen-

---

1. 18 Pa.C.S.A. § 2701(a)(1).

2. The aggravated assault charge was predicated on Shelley's status as an employee of a public school. See 18 Pa.C.S.A. § 2702(a)(5).

dant's guilt was established beyond a reasonable doubt." *Commonwealth v. Collins*, 549 Pa. 593, 599, 702 A.2d 540, 543 (1997).

¶ 5 In order to sustain its burden of proof for simple assault, the Commonwealth must show that the defendant "attempt[ed] to cause or intentionally, knowingly or recklessly cause[d] bodily injury to another." 18 Pa.C.S.A. § 2701(a)(1). The focus in this case is whether or not "bodily injury" was proven. "Bodily injury" is defined by statute as "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S.A. § 2301. Unfortunately, this definition provides little guidance.

¶ 6 This Court most recently undertook to define "bodily injury" in *Commonwealth v. Wertelet*, 696 A.2d 206 (Pa.Super.1997).[3] There, a woman was frustrated by the refusal of a telephone repair crew to leave her property, despite their apparently legitimate right-of-way. She attempted to hamper their activities, requiring police officers to intervene. In the face of her persistence, the officers attempted to place her under arrest, which she resisted. In the struggle, she kicked one of the officers twice in the shin. Because the incident involved a police officer, the defendant was charged with, among other things, aggravated assault.[4]

¶ 7 The issue in *Wertelet* was whether the officer's injuries amounted to "bodily injury" under the statute. In discussing the injuries, we observed:

> The testimony of Trooper Funk was that as appellant struggled while the troopers attempted to handcuff her he was "kicked" by appellant's right heel twice in the left shin. Trooper Funk,

although stating that the pain he experienced from the "kicks" was "substantial," in a more descriptive moment testified that the pain was "similar to bumping your shin on a coffee table in the dark when you're walking through the house." (Trial T. p. 62.) Trooper Funk did not require any medical treatment for the "injury" and was able to perform his duties for the remainder of the shift.

*Id.* at 210. We concluded that the defendant's actions and the trooper's resulting injuries were not consistent with the meaning of "bodily injury":

> There is no evidence that appellant reared back and kicked Trooper Funk as hard as she could. Indeed, she kicked him with the back of her heel as she was flailing about and squirming while the troopers attempted to handcuff her. Trooper Funk was not seriously impaired by the kicks, he was able to continue working, and he did not report even any bruising or swelling. Trooper Funk's characterization of the pain as similar to "bumping your shin on a coffee table" aligns the encounter with those described above and does not fall within the general connotation of the term "injury."

*Id.* at 212–13 (footnote omitted).[5]

¶ 8 In *Wertelet*, we relied on *Commonwealth v. Kirkwood*, 360 Pa.Super. 270, 520 A.2d 451, 454 (1987), another case attempting to define the boundaries of "bodily injury." In *Kirkwood*, the defendant was charged with simple assault for aggressively fast dancing with a woman, a corrections officer at the prison where he formerly was an inmate:

> was aggravated assault and there are indications that the Court might have been more inclined, under the same facts, to conclude that *simple* assault had been proven. We noted that: "Further, [the officer's scrape] hardly seems consistent with the concept of an aggravated assault, an assault of a severe nature, but does seem to fall neatly into the general concept of resisting arrest, harassment or, possibly, simple assault." *Id.* at 213 (emphasis deleted).

---

**3.** We note, as did this Court in *Wertelet*, that there are few cases attempting to define this term. *See Id.* at 210.

**4.** A person is guilty of aggravated assault if he "attempts to cause or intentionally or knowingly causes bodily injury to a police officer making or attempting to make a lawful arrest." 18 Pa.C.S.A. § 2702(a)(3).

**5.** Although this Court focused its analysis on the term "bodily injury," the offense charged

[W]hile she was dancing a fast dance with the other members of her party, she said, Kirkwood had approached her, had grabbed her by the arm and had begun to swing her violently around the dance floor. Sheasley said that she had pleaded with Kirkwood to stop because he was hurting her, but that he had continued to swing her until her husband intervened. The incident, she said, lasted approximately forty seconds and left her with bruises and cut marks on her arms. As a result, she testified, she suffered pain in her arms and her right knee for a short period of time thereafter.

*Id.* at 452–53. We concluded that this activity did not rise to the level of a simple assault, in that "[t]emporary aches and pains brought about by strenuous, even violent, dancing are an inadequate basis for imposing criminal liability upon a dance partner for assault." *Id.* at 454. We further concluded that "the assault section of the Crimes Code was intended to protect and preserve one's physical well-being and was not intended to prevent temporary hurts resulting from trivial contacts which are a customary part of modern day living." *Id.*

¶ 9 This Court also has been reluctant to find assaultive behavior in family situations, to "attach criminality to the pushing, shoving, slapping, elbowing, hair-pulling, perhaps even punching and kicking, that not infrequently occur between siblings or other members of the same family." *Interest of J.L.*, 327 Pa.Super. 175, 475 A.2d 156, 157 (1984). In that case, we reversed the adjudication of delinquency of a sixteen year old for simple assault for elbowing her nephew to push him away.

¶ 10 However, in considering the spectrum of assaultive behavior, convictions for simple assault have been upheld where the behavior is more clearly criminal. *See, e.g., Commonwealth v. Jorgenson*, 341 Pa.Super. 550, 492 A.2d 2 (1985) (affirming conviction for simple assault where victim was struck twice across the face while refusing sexual advances); *Commonwealth v. Adams*, 333 Pa.Super. 312, 482 A.2d 583 (1984) (affirming conviction for simple assault where victim was struck in the head with an object hard enough to almost knock her unconscious); *Commonwealth v. Richardson*, 431 Pa.Super. 496, 636 A.2d 1195 (1994) (affirming conviction for simple assault for punching police officer in the face).

¶ 11 With these cases as background, we turn our analysis to the present matter. Shelley's description of the incident, on direct examination by the Commonwealth, demonstrated that M.H. grabbed Shelley's arm in a clearly aggressive fashion, and pushed her against a wall. Shelley received bruises on her arm which lasted several days. (N.T., 9/14/99, at 11, 12–13.) While Shelley did not need medical treatment or miss work, these are not prerequisites for a conviction of simple assault. *See Richardson*, 636 A.2d at 1196 (rejecting argument that the failure to receive medical treatment or miss work precludes a finding of bodily injury).

¶ 12 We are not willing to view this incident as a "temporary hurt" resulting from a "trivial contact." It cannot be viewed as contact incident to a struggle as in *Wertelet*, which the officer there described as akin to bumping his shin. It cannot be viewed in any sense as social contact as was the, albeit aggressive, dancing in *Kirkwood*. Nor can we view this incident as the type of noncriminal contact resulting from family stress and rivalries as in *Interest of J.L.* In short, we do not consider M.H.'s conduct in any way a "customary part of modern day living." *Kirkwood*, 520 A.2d at 454. That M.H. was a student and Shelley an educational aide, we believe, only serves to highlight the assaultive nature of the contact. Violence in our public schools is an ever increasing problem which presents a troubling challenge to teachers and aides who are charged with the weighty responsibility of educating our Commonwealth's children. In this case, Appellant was properly adjudicated delinquent based on an act of vio-

lence toward a teacher's aide, which the trial court correctly held constituted the reckless infliction of bodily injury. Therefore, we find that the evidence was sufficient to prove simple assault.

¶ 13 Order of disposition affirmed.