J-S91039-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LAIRD LEASK BASEHOAR | : | |
| | : | |
| Appellant | : | No. 274 MDA 2016 |

Appeal from the Judgment of Sentence January 19, 2016
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s): CP-21-CR-0001367-2015


BEFORE: FORD ELLIOTT, P.J.E., RANSOM, J., and STEVENS[*], P.J.E.

MEMORANDUM BY STEVENS, P.J.E.: **FILED FEBRUARY 21, 2017**

Laird Leask Basehoar ("Appellant") appeals from the judgment of sentence entered in the Court of Common Pleas of Cumberland County after a jury convicted her of simple assault and harassment on evidence that she punched and slapped her ex-husband in the face during a domestic dispute.[1] Sentenced to not less than 90 nor more than 729 days in county prison for simple assault, with a consecutive 12-month term of probation for harassment, Appellant challenges orders denying her motions to dismiss

_____

[1] The court convicted Appellant of a third count of summary harassment, which merged with the count of misdemeanor harassment for purposes of sentencing.

[*] Former Justice specially assigned to the Superior Court.

charges on double jeopardy grounds and to stay proceedings pending appeal of said denial, respectively, and she raises numerous other claims of trial court error. We affirm.

The case *sub judice* arises from an assault occurring in the residence of Appellant's ex-husband, 69 year-old Frank Basehoar, with whom Appellant had resumed co-habiting in a quasi-landlord/tenant relationship after nearly two years of living apart following their divorce. According to Mr. Basehoar's testimony at the criminal trial, on April 5, 2015, an apparently intoxicated and verbally abusive Appellant confronted him for about 15 minutes as he sat in his armchair, declining to respond in kind. Eventually, Appellant jabbed him twice in the chest with a closed fist and said "I would like to get a knife and stick it right there." N.T. 10/27/15 at 51. When Mr. Basehoar stood and took several steps toward Appellant, she swung wildly at him and landed two or three blows to the face, causing his right nostril to bleed and producing two cuts beneath his right eye, which later swelled and showed bruising. He called 911 and completed a police report alleging Appellant struck him twice in his face.

Officer Katie Justh of the Lower Allen Police Department testified that she arrived at the household and observed injuries to Mr. Basehoar's nose and eye. N.T. at 89. She discerned in Mr. Basehoar no evidence of alcohol consumption or intoxication, noted his calm manner, and determined that he needed no emergency care. N.T. at 90. With respect to Appellant, Officer Justh noted that she was "irate, upset, screaming, yelling," exhibiting

- 2 -

emotional "highs and lows," alleging that Mr. Basehoar's wounds were self-inflicted, and calling the officer a "fucking bitch." N.T. at 91. Officer Justh arrested Appellant and charged her with the offenses listed *supra*.

At the first jury trial of October 26, 2015, the trial court granted Appellant's motion for mistrial after Officer Justh, in the following exchange, revealed that she knew Appellant from a previous arrest:

> **PROSECUTOR:** When all these police officers show up to the scene, are the neighbors outside or anything?
>
> **OFFICER JUSTH:** Not that I recall, but the way their house kind of sits down, it's kind of like a long driveway and sits down at an angle. So I was more concerned about the wellbeing of the two individuals involved and not the neighbors concern.
>
> **Q:** You said she [Appellant] called you names?
>
> **A:** Yes.
>
> **Q:** What is that about?
>
> **A:** I don't know. A previous arrest.
>
> **Q:** So you said that…
>
> **DEFENSE COUNSEL:** Your Honor, I'm going to object to any references to previous incidents.
>
> **THE COURT:** Correct. Let me stop you there, Officer….

N.T. 10/26/15 at 79.

The court initially gave curative instructions and called for a recess to allow research and argument on defense counsel's sidebar motion for mistrial. The court reconvened and granted Appellant's motion, but before summoning the jury to discharge it, it stated its intent to proceed with a new

- 3 -

trial the following morning and empanel a different jury from the existing jury pool.  N.T. at 85-86.

Defense counsel voiced concern that a jury from the existing pool could not avoid taint from courthouse talk about the reason for mistrial.  N.T. at 86.  The court, however, dismissed the inevitability of taint, called for the jurors, and explained both the reason for mistrial and their duty to refrain from discussing the case with anyone:

> **THE COURT:**  No, the jury poll's [sic] not tainted.  They just can't use these jurors.
>
> **PROSECUTOR:**  Thank you, Your Honor.
>
> **THE COURT:**  We know which jurors they are, and I will tell the Court Administrator. . . .
>
> \*\*\*
> [Addressing the jury upon its return to the courtroom]  Folks, if you can't tell, something happened, and I will tell you what happened.  I declared a mistrial because I can't unring that arrest bell.  You heard that she had been arrested before, and I told them not to talk about anything before April 5th.  I don't know how to take that out of your minds.  I don't know how to erase, erase, erase.
>
> And it had absolutely nothing to do with it.  It was an inartfully worded question.  The officer was trying to figure out the  -- I shouldn't say the officer.  The attorney was trying to ask a question about what was her demeanor like and rather than asking, you know, what her demeanor was like in an arful way, he asked it in an inartful way, that lead [sic] to what the officer's belief was.  [`]Well, I know why she was upset with me and acting this way, because I had prior contact with her.[']  There's all kinds of contact with police, but that being the case, they can't be on the jury tomorrow.
>
> **THE COURT ADMINISTRATOR:**  Okay.

&#42;&#42;&#42;

**THE COURT:** Okay. You are not going to be on this jury. Don't discuss this case with anybody. All right. Wait until you get off jury duty and then I don't care who you discuss it with, but you know one of the questions they are going to ask in the back of the courtoom, does anybody know anything about this case from whatever source? [']Oh, yeah, Juror 27 was telling me about it this morning.['] You said the word [']arrest['] and you can't say that in a courtroom. So that will just muck up things for us, if you talk to anybody, especially the other folks in the jury poll [sic] about this because they are going to ask the question.

So I ask very kindly and I beseech you and I beg you not to talk to anybody about this. Just go back into the jury poll [sic] and say, [']okay, let's go.['] Are we picking more tomorrow?

N.T. at 87-88.

The next day, Appellant filed a pre-trial motion to dismiss charges based on double jeopardy grounds. The court denied the motion, however, as it imputed no intentional misconduct on the part of the prosecution from the improper testimony of Officer Justh. Moreover, the court specifically deemed Appellant's motion frivolous, and in so doing it advised Appellant that governing decisional and rule-based authority did not require the court to stay proceedings should she elect to file a petition for review of the frivolousness decision with the Superior Court. N.T. 10/27/15 at 5-10. Counsel for Appellant expressed his intention to file such a petition for review, but neither the certified record nor docket sheet reflects that such a filing was ever made.

The case proceeded to a second trial where, at the conclusion of testimony offered by Mr. Basehoar, Officer Justh, and Appellant, the newly

empaneled jury returned a verdict of guilty on both charges. On January 19, 2016, the court imposed sentence as noted, *supra*, and this timely appeal followed.

Appellant presents the following questions for our consideration:

**I.    DID THE COURT ERR WHEN IT DEEMED THE MOTION FRIVOLOUS PURSUANT TO PA.R.CRIM.P. 587 BECAUSE THE COMMONWEALTH'S AFFIANT INTENTIONALLY BROUGHT UP MS. BASEHOAR'S CRIMINAL CONDUCT?**

**II.   DID THE COURT ERR WHEN IT DEEMED THE MOTION FRIVOLOUS WITHOUT A HEARING?**

**III.  DID THE COURT ERR WHEN IT DID NOT MAKE A SPECIFIC FINDING OF FACT WHICH SHOULD HAVE INCLUDED A SPECIFIC FINDING AS TO FRIVOLOUSNESS?**

**IV.   DID THE COURT ERR WHEN IT FORCED MS. BASEHOAR TO HAVE HER CASE RETRIED THE VERY NEXT DAY BECAUSE THERE WAS NO WAY TO ENSURE THAT THE NEW JURY PANEL WAS NOT TAINTED?**

**V.    DID THE COURT ERR WHEN IT DID NOT ALLOW MS. BASEHOAR TO PETITION THE SUPERIOR COURT REGARDING THE FRIVOLOUSNESS FINDING WITHIN 30 DAYS PURSUANT TO PA.R.CRIM.P. 587(B)(5) BEFORE HAVING TO RETRY THE CASE?**

**VI.   DID THE COURT ERR WHEN IT FORCED MS. BASEHOAR TO HAVE HER CASE RETRIED THE VERY NEXT DAY WHEN MS. BASEHOAR'S ABILITY TO IMPEACH A WITNESS WAS IMPROPERLY IMPAIRED BECAUSE SHE DID NOT HAVE A TRANSCRIPT FROM THE PREVIOUS TRIAL?**

**VII. DID THE COURT ERR IN ACCEPTING THE VERDICT AFTER THE COMMONWEALTH FAILED TO PRESENT EVIDENCE SUFFICIENT TO ESTABLISH THAT MS. BASEHOAR CAUSED OR ATTEMPTED TO CAUSE BODILY INJURY BEYOND A REASONABLE DOUBT?**

Appellant's brief at 7-8.

Appellant's first, second, third and fifth issues coalesce to challenge the trial court's orders denying her motion to dismiss on double jeopardy grounds, finding her motion frivolous, and denying her request to stay proceedings pending her filing of a petition of review of the frivolousness decision. Initially, we note that an abuse of discretion standard of review applies in cases denying a motion to dismiss on double jeopardy grounds following the declaration of a mistrial, and absent an abuse of that discretion, we will not disturb the court's decision. *See Commonwealth v. Walker,* 954 A.2d 1249, 1254 (Pa.Super. 2008) (*en banc*). Moreover:

> [t]o the extent that the factual findings of the trial court impact its double jeopardy ruling, we apply a more deferential standard of review to those findings:
>
> > Where issues of credibility and weight of the evidence are concerned, it is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. The weight to be accorded conflicting evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record.

*Commonwealth v. Graham*, 109 A.3d 733, 735–737 (Pa. Super. 2015) (internal quotations, citations, and original brackets omitted).

Where a mistrial is declared, the double jeopardy clause bars retrial only in those instances where mistrial was intentionally caused by

prosecutorial misconduct. ***Commonwealth v. Simons***, 522 A.2d 537, 540 (Pa. 1987). ***See also Commonwealth v. Smith***, 615 A.2d 321, 325 (Pa. 1992) (holding Article I, § 10, which our Supreme Court has construed more broadly than double jeopardy clause, bars retrial "not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial."). Mere prosecutorial error does not deprive the defendant of a fair trial. ***Commonwealth v. Kearns***, 70 A.3d 881, 884 (Pa.Super. 2013). As we have explained:

> Thus under Pennsylvania jurisprudence, it is the intentionality behind the Commonwealth's subversion of the court process, not the prejudice caused to the defendant, that is inadequately remedied by appellate review or retrial. By and large, most forms of undue prejudice caused by inadvertent prosecutorial error or misconduct can be remedied in individual cases by retrial. Intentional prosecutorial misconduct, on the other hand, raises systematic concerns beyond a specific individual's right to a fair trial that are left unaddressed by retrial. As this Court has often repeated, '[a] fair trial is not simply a lofty goal, it is a constitutional mandate, ... [and] [w]here that constitutional mandate is ignored by the Commonwealth, we cannot simply turn a blind eye and give the Commonwealth another opportunity.'

***Id.*** at 884–85 (quoting ***Commonwealth v. Chmiel***, 777 A.2d 459, 464) (Pa.Super. 2001).

Appellant first contends that the court erroneously failed to infer intentional misconduct on behalf of the Commonwealth where Officer Justh, as a law enforcement officer, clearly should have known Appellant's prior

arrest record was inadmissible and must have offered such information "as a way of tainting Ms. Basehoar." It was the trial court's judgment, however, that Officer Justh's testimony was the product not of intentional prosecutorial misconduct designed to deprive Appellant of a fair trial but, instead, a poorly articulated, open-ended question asking why Appellant acted belligerently toward the officer.

In reviewing this line of questioning, reproduced *supra*, we agree with the trial court's assessment that this was a direct examination gone unexpectedly awry, without intentional prompting by the prosecution. Indeed, we have held that when the prosecution asks an open-ended question there is no intentional misconduct. ***See Graham***, 109 A.3d 739 (holding no misconduct when aggravated indecent assault victim testified she feared defendant might assault her child or nephew when asked an open-ended question about why she waited to report the defendant). Moreover, there is no indication in the record that the trial was going so poorly for the prosecution, or that the jury may have been unreceptive to the testimony of the Commonwealth witnesses, that the prosecutor would have been motivated to engage in misconduct in order to force a mistrial and obtain a second chance to prosecute the case. Accordingly, because the record supports the trial court's exercise of discretion, we discern no basis for disturbing its order denying Appellant's motion to dismiss.

Appellant next contends that the court erred in declaring her motion frivolous and proceeding immediately to a second trial when it conducted no

hearing, made no specific finding of frivolousness, and denied her the opportunity to file a petition for review on the frivolousness decision before the commencement of retrial. We disagree.

Generally, criminal defendants have a right to appeal a trial court's pre-trial double jeopardy determination, even though the ruling is technically interlocutory. **Commonwealth v. Orie**, 22 A.3d 1021 (Pa. 2011) (*per curiam*) (citation omitted). "[P]retrial orders denying double jeopardy claims are final orders for purposes of appeal." **Id.** at 1024. If a court finds a double jeopardy claim frivolous, however, retrial may commence without an automatic stay while the defendant may file a petition of review of the frivolousness decision in the Superior Court. **Id.** at 1027; **Commonwealth v. Brady**, 508 A.2d 286 (Pa.Super. 1986) (precluding of-right interlocutory appeal and automatic stay of retrial where trial court deems double jeopardy challenge frivolous); Pa.R.A.P. 1501.

This Court has addressed the procedural requirements for motions to dismiss on grounds of double jeopardy:

> [I]n 2013, the Pennsylvania Rules of Criminal Procedure were amended to codify the common law framework for motions to dismiss on double jeopardy grounds. In particular, effective July 4, 2013, Rule 587(B) was added to govern pretrial double jeopardy motions. Specifically, Rule 587(B) provides in pertinent part:
>
> > (1) A motion to dismiss on double jeopardy grounds shall state specifically and with particularity the basis for the claim of double jeopardy and the facts that support the claim.

- 10 -

> (2) A hearing on the motion shall be scheduled in accordance with Rule 577 (Procedures Following Filing of Motion). The hearing shall be conducted on the record in open court.
>
> (3) At the conclusion of the hearing, the judge shall enter on the record a statement of findings of fact and conclusions of law and shall issue an order granting or denying the motion.
>
> (4) In a case in which the judge denies the motion, the findings of fact shall include a specific finding as to frivolousness.
>
> (5) If the judge makes a finding that the motion is frivolous, the judge shall advise the defendant on the record that a defendant has a right to file a petition for review of that determination pursuant to Rule of Appellate Procedure 1573 within 30 days of the order denying the motion.
>
> \*\*\*

Pa.R.Crim.P. 587(B) (emphasis added).

**_Commonwealth v. Taylor_**, 120 A.3d 1017, 1022 (Pa.Super. 2015).

Our review of the record reveals that the trial court entertained Appellant's motion to dismiss in conformance with the procedures outlined in Rule 587(B). Prior to the commencement of retrial, the court conducted a hearing to make an appropriate record in response to its denial of Appellant's motion to dismiss. Specifically, the court permitted argument by counsel for Appellant, who asked the court to make a Rule 587(B) finding of "whether or not the motion is frivolous." N.T. 10/27/15 at 5. Counsel also posited that Appellant had the right to an immediate interlocutory appeal regardless of the court's frivolousness determination. The court acknowledged its obligation to make a frivolousness finding and to advise

- 11 -

Appellant of such a finding on the record, and it did so by announcing in open court its order making the specific finding that Appellant's motion was frivolous. N.T. at 6.

The court, then, addressed Appellant's right to file a petition for review of the court's frivolousness decision in light of *Orie* and *Brady*. After acknowledging Appellant's right to file a petition, *see* N.T. at 7, the court heard argument from the prosecution to the effect that Pa.R.A.P. 1573 and 1701, which reflect the codification of such decisional law, together provide that a petition for review shall not automatically stay proceedings in the trial court where the court has deemed the double jeopardy challenge frivolous. Instead, the trial court may allow retrial to proceed while the petition for review is pending before the appellate court, the prosecution argued. N.T. at 8. The court agreed with the prosecutor's interpretation of controlling authority and confirmed with defense counsel that Appellant had, in fact, asked for a stay pending her filing of a petition for appellate review. An order denying Appellant's request for a stay was thereafter entered. N.T. at 9-10.

Therefore, we reject as factually groundless Appellant's bald argument that the court erroneously made the frivolousness determination "without hearing argument or testimony[]" as required by Rule 587. Appellant's brief at 16. The court, in fact, permitted argument by counsel, addressed Appellant's motion in open court, specifically found the motion to be frivolous, and entered an order to that effect with instructions that it be

- 12 -

transcribed as a written order, as well. The court, likewise, acknowledged Appellant's right to file a petition for review on the frivolousness question and entertained argument on her request to stay proceedings pending appellate review before it entered a second order denying her request and slating her case for immediate retrial. Accordingly, Appellant is entitled to no relief on Issue II, III, and V.[2]

In Appellant's fourth issue, she charges court error with the decision to select the retrial jury from the jury pool existing at the time of mistrial, because "the jury in the instant case may have learned of [Appellant's] prior criminal record from mingling with the jurors who served during [her] mistrial." Appellant's brief at 19-20. Appellant admits she had the opportunity to *voir dire* all venire persons, but she claims that neither she nor anyone else "asked questions that would rule out any juror who knew of Ms. Basehoar's mistrial and prejudicial references to her criminal record."

_____

[2] Although we have elected to address Appellant's claims II and III on the merits, we note these claims were also subject to waiver, for Appellant never voiced an objection asserting that the court's hearing and findings of fact were procedurally flawed. Pa.R.A.P. 302(a) (stating: "Issues not raised in the [trial] court are waived and cannot be raised for the first time on appeal"); **Commonwealth v. Duffy**, 832 A.2d 1132 (Pa.Super. 2003) (holding party must make timely and specific objection at trial to preserve issue for appellate review). Moreover, we note that Appellant never filed a petition for review with this Court on the frivolousness determination.

The record as reproduced, *supra*, shows the court took several precautions to avoid the possibility of a tainted second jury. It emphatically instructed mistrial jurors before their discharge that they were to refrain from discussing any aspect of this case to anyone for as long as they remained in the jury pool. The court also instructed the court administrator to ensure that no juror from the first trial be included as a prospective juror in the second trial. Finally, to defense counsel's voiced concern about the possibility of taint, the court advised:

> **THE COURT:** But you are going to ask the question, [`]does anybody know anything about this case from whatever source[?'], because I actually warned each of the jurors here yesterday not to discuss the case because that was going to be one of the questions, like everybody asked yesterday, does anybody know anything about this case from whatever source, newspaper, radio, friends, you know, fellow jurors.
>
> If there is cross contamination then your argument from yesterday would have merit, but I don't know that, and I tried to take – I will use my word here – prophylactic steps to prevent that. We are going to see if it worked.

N.T. 10/27/15 at 10.

Notably, during *voir dire*, the prosecution confirmed with venire persons that they did not know either Appellant or Mr. Basehoar and had not learned anything about the case from any source. N.T. at 18-19. Defense counsel, however, asked no questions pertaining to possible jury pool discussions about the mistrial. N.T. at 23-24.

The jury selection process is crucial to the preservation of a criminal defendant's right to an impartial jury explicitly guaranteed by Article I,

section 9 of the Pennsylvania Constitution. ***Commonwealth v. Ingber***, 531 A.2d 1101, 1102 (Pa. 1987). The decision whether to disqualify a venire person is within the discretion of the trial court and will not be disturbed on appeal absent a palpable abuse of that discretion. ***Id***. at 1103 (citations omitted).

Here, Appellant essentially argues that we should presume her jury was incapable of rendering an impartial verdict based on the mere possibility that one or more of its members learned of her prior arrest record from a former juror seated in the first trial. All second trial jurors, however, were subject to *voir dire* and claimed to possess no prior knowledge from any source about either Appellant or Mr. Basehoar. Defense counsel did not test this response with a more specific question tailored to the possibility of courthouse conversations about the case. From this record, we find no palpable abuse of discretion in the court's decision to empanel the jury, and we, therefore, find Appellant's claim of reversible error devoid of merit.

Appellant next contends that the court's decision, over objection, to commence retrial on the day after mistrial unfairly precluded her ability to impeach Mr. Basehoar with a transcript of his testimony from the previous day. According to Appellant:

> [t]he Commonwealth's main witness, Mr. Basehoar, testified during the mistrial that Ms. Basehoar connected with his face once; however, during the second trial, Mr. Basehoar testified that he was struck three or four times. Mr. Basehoar had a right to use the transcripts from the first trial as a tool to impeach Mr. Basehoar's credibility.

Appellant's brief at 25.

Appellant has mischaracterized the record. Our review reveals Mr. Basehoar testified at the first trial that he was unsure how many times Appellant struck him because he did not count, but that it could have been two or three times:

> **MR. BASEHOAR:** [Recounting the conflict between himself and Appellant] I did take two steps towards her, but I was not within 4 feet. And then she swung 1, 2 or 3 times at me. She connected to the right side of my face. I think she hit me with a closed fist, but at that time she had pretty long nails so I knew I was bleeding.
>
> **\*\*\***
>
> **PROSECUTION:** You said she hit you, was that 1, 2 or 3 times? Are you saying you don't know or…?
>
> **MR. BASEHOAR**: My report says two times. It could have been two or three times. You know, when you're being swung at, you turn your head, and, you know, I turned my eyes and I turned my head away. I turned it to the left side. That is why I took the impact on the right side of my face.
>
> **\*\*\***
>
> **DEFENSE COUNSEL:** So you recall telling the police that she hit you twice?
>
> **MR. BASEHOAR:** I recall her telling the police that she hit me two or three times, but I think my report said twice.
>
> **DEFENSE COUNSEL:** Now, here today you would agree that you testified that you think that she actually hit you, in other words that she connected with you once?
>
> **MR. BASEHOAR:** No, I think she connected with me two different times, one to the nostril, one under the eye where the cut was.

N.T. 10/26/15 at 49, 50, 66-67. It was also established that Mr. Basehoar sustained a bloody nose, a cut on the upper part of his nose, a cut beneath his right eye, which also became swollen, painful, and eventually black and blue. N.T. at 50-51, 53.

On retrial, Mr. Basehoar initially testified that he believed Appellant struck him three or four times, N.T. 10/27/15 at 52-53, but on cross-examination he modified his estimate to reconcile it with a police report in which he told investigators that Appellant landed two blows. N.T. at 76. In response to continued cross-examination on the details of Appellant's alleged attack, Mr. Basehoar testified further:

> **MR. BASEHOAR:** I think she hit me with both hands. She was swinging wildly. Okay? I think there were several strikes thrown, and I think that there may have been two that connected, possibly three. I didn't count them. I was turning my face away trying to protect my eyes.

N.T. at 80.

The record belies Appellant's assertion that Mr. Basehoar testified to just one landed blow at the first trial, for it is clear he settled on an estimate of "two or three" blows within an overall testimony admitting to uncertainty about the exact number. Nor did he persist in his initial estimate at the second trial of three to four blows, as he revised his estimate to two to three after defense counsel presented him with his statement given to police investigators. To the extent that Appellant charges Basehoar with giving widely disparate testimonies, therefore, we find she mischaracterizes the evidence.

Moreover, Appellant fails to explain how confronting Basehoar with a transcript of his previous testimony alleging two to three blows would have impeached Appellant to a greater degree than what was achieved by gaining his concession that he told police investigators he incurred only two blows. In either instance, the jury would hear that Basehoar's testimony of three to four blows was inconsistent with a prior official statement of two blows. Finally, Appellant fails to direct us to where in the record she asked for a continuance to allow time to acquire a transcript for impeachment purposes, an omission that makes her claim of court error subject to waiver. We, therefore, reject this claim as meritless.

Finally, Appellant contends that the Commonwealth presented insufficient evidence to prove the "caused or attempted to cause bodily injury" element to simple assault. This Court's standard of review of a challenge to the sufficiency of the evidence is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact[-]finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, the fact that the evidence establishing a defendant's participation in a crime is

circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact[-]finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

***Commonwealth v. Rahman***, 75 A.3d 497, 500–01 (Pa. Super. 2013) (citations and quotations omitted).

A defendant is guilty of Simple Assault if she "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another [.]" 18 Pa.C.S. § 2701(a)(1). "Bodily injury" is an "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S. § 2301.

According to Mr. Basehoar, Appellant had spent the entire Easter Sunday in her bedroom until about 5:30 p.m., when she came out "enraged, agitated, upset screaming using various [profanities]." N.T. at 50. She screamed "at the top of her lungs" for between 10 and 20 minutes. N.T. at 55. "She said to me, [']Why don't you fucking leave the fucking house, you asshole. Get the hell out of here. I don't want you here. . . . The dogs don't want you here. Nobody wants you here. Get the fuck out.[']" N.T. at 51.

Mr. Basehoar grew increasingly frustrated and upset during this outburst, but employing calming techniques recently learned at over 20 counseling sessions he attended with Appellant, he quietly remained seated in his armchair. Appellant did not desist, however, and she came around to

the front of his chair, thumped him twice in the chest with a closed fist, and said she would like to stab him there. N.T. at 51. When Basehoar stood up, approached her, and suggested she take a walk outside, Appellant "started to throw punches" which caused Basehoar to sustain both a bloody nose and a cut, swollen, and bruised eye. N.T. at 52.

When viewed in a light most favorable to the verdict winner, the evidence adduced at trial established that Appellant attempted to cause substantial pain to her ex-husband when she struck him several times in the face. This Court "has been reluctant to find assaultive behavior in family situations, to 'attach criminality to the pushing, shoving, slapping, elbowing, hair-pulling, perhaps even punching and kicking, that not infrequently occur between siblings or other members of the same family.'" **In re M.H.**, 758 A.2d 1249 (Pa.Super. 2000) (quoting **Interest of J.L.**, 475 A.2d 156, 157 (Pa.Super. 1984). Where malicious intent to injure may be inferred from surrounding circumstances, however, the act is actionable criminally. **See Interest of J.L.** at 158.

Here, it was reasonable for a jury to infer Appellant's malice from her protracted and extreme tirade, which reached its violent crescendo after she provocatively jabbed her ex-husband's chest with a closed fist and wished aloud about plunging a knife "right there." Gaining a reaction from him, she then wildly punched at his face, landing two or three solid blows which caused bleeding and swelling. We, therefore, conclude that Appellant acted

with the specific intent to cause bodily injury necessary for a conviction of simple assault.

For the foregoing reasons, judgment of sentence is AFFIRMED.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/21/2017