J-S32005-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NICOLE MANEVAL | : | |
| | : | |
| Appellant | : | No. 1465 MDA 2021 |

Appeal from the Judgment of Sentence Entered August 25, 2021
In the Court of Common Pleas of Lycoming County
Criminal Division at No(s):  CP-41-CR-0001190-2018

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and LAZARUS, J.

MEMORANDUM BY PANELLA, P.J.:          **FILED: DECEMBER 2, 2022**

Nicole Maneval appeals from the judgment of sentence imposed following her convictions of aggravated assault of a child less than six years of age, simple assault, and endangering the welfare of children ("EWOC"). *See* 18 Pa.C.S.A. §§ 2702(a)(8); 2701(a)(1); 4304(a)(1). Maneval argues that the evidence was insufficient to support her convictions and that the verdicts were against the weight of the evidence. We affirm.

Renee Rafter ("Mother") and William Batts, Jr., ("Father") had a daughter, P.B., in September 2013. Notably, in March 2018, Mother lived with her husband and Father lived with his fiancée, Maneval, and the parties alternated weeks of custody of P.B. On March 13, 2018, P.B. was in the care of Father and Maneval. On that day, while attending daycare, P.B. spilled milk on her shirt. The employees of the daycare had to change her shirt and found

no marks or bruises on her upper body. The following day, the employees noticed marks on P.B.'s neck, and subsequently noticed several marks or bruises on her body, including a bruise on her back with a noticeable zigzag pattern that looked like a shoe print.

The daycare contacted Children and Youth Services and law enforcement authorities, who investigated the matter. They determined that P.B. was in the care, custody, and control of Father and Maneval, and that P.B. had not been in Mother's custody since March 9, 2018. Subsequently, police officers executed a search warrant at Father's and Maneval's residence. In the main bedroom, they found a pair of women's boots with a zigzag pattern belonging to Maneval that was consistent with the bruise on P.B.'s back.

As a result, the Commonwealth charged Maneval with aggravated assault of a child less than six years of age, simple assault, and EWOC. The case proceeded to a bench trial, after which the trial court found Maneval guilty of the charges. The trial court then sentenced Maneval to 8 to 24 months less one day of incarceration in the Lycoming County Prison followed by three years' probation. Maneval filed a post-sentence motion, asserting that the verdict was against the weight of the evidence. The trial court denied the motion. This timely appeal followed.

On appeal, Maneval raises the following questions for our review:

I. Whether the evidence presented at trial was insufficient to support [Maneval's] conviction for aggravated assault … and simple assault … since the Commonwealth failed to prove, beyond a reasonable doubt, that [Maneval] acted with the

requisite mens rea and intentionally, knowingly, or recklessly caused or attempted to cause bodily injury to [P.B.]?

II. Whether the evidence presented at trial was insufficient to support [Maneval's] convictions for aggravated assault … and simple assault … since the Commonwealth failed to prove, beyond a reasonable doubt, that [Maneval] caused bodily injury to [P.B.]?

III. Whether the evidence presented at trial was insufficient to support [Maneval's] conviction for [EWOC] … since the Commonwealth failed to prove, beyond a reasonable doubt, that [Maneval] acted with the requisite mens rea and knowingly endangered the welfare of [P.B.] by violating a duty of care, protection or support?

IV. Whether the trial court erred in denying [Maneval's] post-sentence motion for a new trial because the trial court's verdict of guilty on all counts was against the weight of the evidence, manifestly unreasonable, and so contrary to the evidence as to shock one's sense of justice since certain facts were so clearly of greater weight that to ignore them or to give them equal weight with all the other facts is to deny justice?

Appellant's Brief at 9 (internal citations and some capitalization omitted; issues renumbered for ease of disposition).

We will address Maneval's first two interrelated claims together. Maneval contends that the evidence was insufficient to support her aggravated assault and simple assault convictions. *See id.* at 23, 26, 27. Maneval argues that there is no evidence to establish her state of mind, noting that P.B. did not testify that Maneval knowingly, intentionally, or recklessly stepped on her back. *See id.* at 25-26. Maneval highlights P.B.'s testimony that Maneval was not angry and did not yell; P.B. gave nonsensical answers when asked whether

Maneval stepped on her back on purpose, including that Father was not home at the time; and P.B. did not know why Maneval hurt her. *See id.*

Likewise, Maneval asserts the evidence did not establish that P.B. suffered bodily injury or that Maneval attempted to cause bodily injury to P.B. *See id.* at 23, 27, 28. Maneval emphasizes that P.B. did not yell or cry, was not physically impaired, and did not require medical care. *See id.* at 27.

Our standard of review for sufficiency claims is as follows:

> The standard we apply is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Edwards*, 229 A.3d 298, 305-06 (Pa. Super. 2020) (citation, brackets, and ellipses omitted).

A person is guilty of simple assault if she "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]" *Id.* § 2701(a)(1). Similarly, a person is guilty of aggravated assault if she

"attempts to cause or intentionally, knowingly or recklessly causes bodily injury to a child less than six years of age, by a person 18 years of age or older[.]" 18 Pa.C.S.A. § 2702(a)(8). "Bodily injury" is defined as "[i]mpairment of physical condition or substantial pain." *Id.* § 2301. "The existence of substantial pain may be inferred from the circumstances surrounding the use of physical force even in the absence of a significant injury." *Commonwealth v. Wroten*, 257 A.3d 734, 744 (Pa. Super. 2021) (citation omitted).

At trial, P.B., who was four years old and staying with Father and Maneval in March 2018, testified that Maneval purposefully stepped on her back while wearing boots. *See* N.T., 11/2/20, at 95-96, 98, 100-02, 104, 105, 129-30, 133. P.B. indicated that Maneval hurts her a lot. *See id.* at 121-22; *see also id.* at 101 (wherein P.B. testified that Maneval would hurt her when Father was not home, but in this instance Father was home). P.B. also stated that she did not do anything wrong before Maneval stepped on her, and that she did not cry or yell when the incident occurred. *See id.* at 104, 106, 128, 133.

The lead investigator, Trooper Jamesan Keeler, testified that P.B.'s injuries on her back had a zigzag pattern. *See* N.T., 11/2/20, at 5, 13-15. The police obtained and executed a search warrant on Father's home and found a pair of women's boots in the main bedroom of the residence that matched the

pattern found on P.B.'s back. *See id.* at 5-6, 7-8, 10, 20-21; *see also id.* at 28, 30.

Emily Stravrides, P.B.'s preschool teacher, stated that she observed numerous marks on P.B.'s body, which she had not observed the day before, and immediately informed her boss and Children and Youth Services. *See id.* at 33-36, 44. Stravrides described the bruises on P.B.'s neck and back and noted that one bruise looked like a shoe print. *See id.* at 36, 37; *see also id.* at 51 (wherein Elizabeth Spagnuolo, an employee of Lycoming County Children and Youth Services, testified that P.B.'s back had abrasions and bruising that appeared to be in the shape of a shoe). Stravrides testified that P.B. seemed to be in normal spirits and did not complain on the day the bruises were discovered. *See id.* at 41, 46.

Bobbi McLean, a clinical social worker and P.B.'s therapist, testified P.B. indicated that Maneval stepped on her back while P.B. was watching television, and after P.B. cried out that she was hurt, Maneval pressed down harder. *See* N.T., 1/22/21, at 6. McLean further stated that P.B. was consistent with her identification of Maneval as the perpetrator. *See id.* at 6-7. McLean also indicated the first disclosure was unprompted. *See id.* at 7. McLean diagnosed P.B. with adjustment disorder stemming from the custody situation with her parents and PTSD. *See id.* at 8. Additionally, McLean testified she would not be concerned if P.B. characterized the injury as "kicked" rather than stepped on because young children would struggle with details, especially those

suffering from PTSD. **See id.** at 17-18; **see also id.** at 22 (noting that P.B. could be making things up, but that such behavior was typical of a child her age).

Mother also testified that P.B. consistently identified Maneval as the person who stepped on her back with her shoe and hurt her. **See id.** at 48-50; **see also id.** at 48 (wherein Mother stated that P.B. identified "mama Nikki" as the person who stepped on her). Mother explained that P.B. did not have the injuries when she was in last in Mother's care on March 9, 2018. **See id.** at 43. Mother further stated that P.B. was generally truthful. **See id.** at 76, 78-80.

Father testified that on the evening of March 13, 2018, P.B. watched television while Maneval slept. **See id.** at 159-60. Father stated that at no time did he hear Maneval go into P.B.'s bedroom and that he would have heard something if anything had happened. **See id.** at 161-62. Father noted P.B.'s bedtime routine was normal but admitted he did not see P.B. with her shirt off. **See id.** at 171-72.

Maneval stated she was P.B.'s primary caretaker from 2016 until the incident in question. **See id.** at 182. Maneval testified that she never stepped on P.B.'s back. **See id.** at 184, 192, 194. However, Maneval confirmed that the boots seized by the police belonged to her. **See id.** at 199.

When reviewing the credible evidence set forth by the Commonwealth, as well as the reasonable inferences drawn from that evidence in the light

most favorable to it, there was sufficient evidence to establish that Maneval knowingly and intentionally stepped on P.B.'s back and P.B. suffered bodily injury as a result. Indeed, on March 13, 2018, when P.B. was four years old and in the care of Father and Maneval, P.B. stated that Maneval stepped on her back, causing bruising in the shape of a shoe on her back. The subsequent police investigation revealed Maneval owned boots that had the same pattern as the bruising on P.B.'s back. Further, P.B.'s statement that Maneval pressed down harder after P.B. cried out was sufficient, if believed, to find Maneval acted knowingly or intentionally. Accordingly, the evidence was sufficient to support the aggravated assault and simple assault convictions. *See In re M.H.*, 758 A.2d 1249, 1252-53 (Pa. Super. 2000) (affirming conviction of simple assault and finding bodily injury where an educational aide was grabbed by the arm by a student and pushed against the wall, receiving bruises on her arm that lasted several days).

In her third claim, Maneval argues that the evidence was insufficient to support her EWOC conviction, claiming that the Commonwealth did not prove that she knowingly endangered P.B. by violating her duty of care, protection, or support. *See* Appellant's Brief at 29. Maneval again asserts that P.B. was unable to articulate a single detail about the incident that would suggest Maneval knowingly violated her duty of care. *See id.* Rather than further develop her argument, Maneval simply adopts her reasoning in her above sufficiency claims to support her claim. *See id.* at 29-30.

As a preliminary matter, when an appellant attempts to incorporate by reference claims that she has addressed elsewhere and fails to fully argue them in her brief, the issue is waived on appeal. *See Commonwealth v. Briggs*, 12 A.3d 291, 342-43 (Pa. 2011) (concluding that incorporating arguments by reference is an unacceptable manner of appellate advocacy and results in waiver of the arguments). Nevertheless, despite Maneval's deficient argument, we conclude that the evidence was sufficient to support Maneval's EWOC conviction.

The Crimes Code defines EWOC, in relevant part, as follows:

A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.

18 Pa.C.S.A. § 4304(a)(1). "[T]he term 'person supervising the welfare of a child' means a person other than a parent or guardian that provides care, education, training or control of a child." *Id.* § 4304(a)(3). The Commonwealth must prove the following to sustain the intent element of EWOC:

(1) [t]he accused was aware of his/her duty to protect the child; (2) [t]he accused was aware that the child was in circumstances that could threaten the child's physical or psychological welfare; and (3) [t]he accused has either failed to act or has taken action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare.

*Commonwealth v. Bryant*, 57 A.3d 191, 197 (Pa. Super. 2012) (citation and brackets omitted).

Viewing this testimony in the light most favorable to the Commonwealth as verdict winner, the Commonwealth produced sufficient evidence to establish Maneval committed EWOC. Indeed, the record indicates that Maneval resided with and cared for P.B. *See id.* (noting that courts "have extended a duty of care to non-relatives who exercise some supervisory role over children."). Further, the evidence established that Maneval stepped on P.B.'s back, which caused her to have a shoe-shaped bruise on her back. Therefore, there was sufficient evidence to find that Maneval owed a duty of care to P.B. and violated that duty when she stepped on her back, thereby placing P.B. in circumstances that could endanger her physical and psychological well-being. *See id.* at 199 (concluding that evidence was sufficient to support EWOC conviction where appellant, who was not a parent or guardian of child, owed a duty of care to child and violated the duty when he abused her). Accordingly, Maneval's third claim is without merit.

In her final claim, Maneval contends that the trial court abused its discretion by denying her weight of the evidence claim, arguing that the evidence was tenuous and uncertain and that the verdicts shock one's sense of justice. *See* Appellant's Brief at 18, 22. Maneval asserts that P.B. has a documented history of making up stories and further that she gave materially inconsistent accounts of the incident. *See id.* at 19-20; *see also id.* at 20 (noting that P.B. testified inconsistently regarding who was present in the house when she received the bruise on the night in question). Maneval

additionally argues that P.B. was unable to testify as to any detail surrounding the alleged incident that would suggest that she knowingly, intentionally, or recklessly stepped on P.B.'s back. *See id.* at 20-21. Maneval also claims that Father's testimony that Maneval slept most of the day; he did not hear any screaming; and P.B. was acting normally and did not fear Maneval supported her argument that the verdict was against the weight of the evidence. *See id.* at 22.

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence.

*Commonwealth v. Sexton*, 222 A.3d 405, 414 (Pa. Super. 2019) (citation and emphasis omitted).

Here, Maneval is asking us to both reject the trial court's findings and credibility determinations in favor of the factual findings and credibility determinations that she proposes and reweigh the evidence. We decline Maneval's invitation to do so, because it was within the province of the trial judge, as fact-finder, to resolve all issues of credibility, resolve any conflicts in evidence, make reasonable inferences from the evidence, believe all, none, or some of the evidence, and ultimately adjudge Maneval guilty. *See* Trial Court Opinion, 3/4/22, at 5-7; *see also Commonwealth v. Clemens*, 242 A.3d 659, 667 (Pa. Super. 2020) (noting that the fact-finder "is free to believe

- 11 -

all, none or some of the evidence and to determine the credibility of the witnesses." (citation omitted)). We cannot reweigh the evidence and we must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. **See Commonwealth v. Clay**, 64 A.3d 1049, 1056-57 (Pa. 2013) (noting that appellate courts are precluded from reweighing the evidence and substituting our judgment for that of the fact-finder).

Here, P.B.'s testimony was not so inconsistent or contradictory as to render a verdict based thereon, in addition to corroborating testimony and evidence, a matter of speculation or conjecture. Accordingly, the trial court acted within its discretion in denying Maneval's weight of the evidence claim. **See Commonwealth v. Chamberlain**, 30 A.3d 381, 396 (Pa. 2011) ("A motion alleging the verdict was against the weight of the evidence should not be granted where it merely identifies contradictory evidence presented by the Commonwealth and the defendant.").

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/2/2022

- 12 -