J-S07014-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JARRETT SCHAFFER | : | |
| | : | |
| Appellant | : | No. 1830 EDA 2021 |

Appeal from the Judgment of Sentence Entered October 24, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0005726-2018

BEFORE:  DUBOW, J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY DUBOW, J.:                         **FILED JUNE 14, 2023**

Appellant, Jarrett Schaffer, appeals from the October 24, 2019 judgment of sentence of two years' probation following his convictions for Simple Assault and False Imprisonment.  He challenges, *inter alia*, the weight and sufficiency of the evidence.  Upon review, we affirm.

Appellant met Lobynn Cha ("Victim") in October 2014 when he was a client at a strip club where Victim was working.  They began a transactional sexual relationship a year later which evolved into a more traditional girlfriend/boyfriend relationship, although the two fought often.[1]

In early 2018, Appellant and Victim moved into a studio apartment together in Philadelphia.  At the time, the relationship was "rocky," and Victim wanted to break up.  N.T. Trial, 10/24/19, at 19.  Appellant, however,

---

[1] For instance, in September 2017, Appellant strangled Victim during a fight and Victim kneed Appellant in his face, giving him a black eye.

threatened to call Victim's parents to expose private details about her life if she left him, including the fact that she previously worked at a strip club and details about their relationship.

During this time, Victim began dating another man, Steve Gallo. Appellant found out about the relationship. On April 27, 2018, Appellant tracked Victim's phone and drove to Mr. Gallo's home, where Victim was alone sleeping and took pictures of her car. At 8:00 AM, Victim woke up and discovered multiple missed calls from Appellant and from Mr. Gallo, who warned her not to leave the house because of Appellant.

Victim later agreed to meet Appellant at a coffee shop near their apartment because she was worried that Appellant would contact her parents. When they met around 10:15 AM, Appellant appeared sad and asked to speak in their apartment; Victim agreed after Appellant promised not to touch her.

When they arrived at the apartment, there were alcohol bottles scattered around. Appellant asked Victim to have a shot of alcohol with him and Victim complied. Appellant continued to drink alcohol and talk about their relationship.

Around 11:00 AM, Victim left the apartment. As Victim was about to drive away, Appellant ran up to the car barefoot claiming that he locked himself out of the apartment. Victim agreed to unlock the door for Appellant. When Victim entered the building, she saw that the apartment door was, in fact, wide open. Appellant then pushed her inside and took her keys from her. Victim sat on the corner of a futon observing Appellant drink alcohol as

he complained about how his life was ruined, proclaimed he was suicidal, and ran a dull kitchen knife across his arms without drawing blood.

About an hour later, Appellant became so intoxicated that he vomited and passed out on the floor. Victim remained in the apartment because she became concerned that Appellant would vomit again and choke.

Around 2:00 PM, Appellant woke up. Victim looked for her keys and tried to leave but Appellant blocked Victim, threw her onto the futon, and told Victim she was not going to leave until they finished their conversation. Victim unsuccessfully tried to leave five times but did not put up much resistance because she was afraid that Appellant was going to choke her as he had done before.

Around 4:00 PM, Victim informed Appellant that she had to leave for a prior engagement. Appellant took Victim's watch, threw it across the room, told her she was not leaving, slammed her head into the wall multiple times, threw her on the futon, got on top of her, held her down with his legs, and put a pillow over her face to prevent her from screaming. Every time Victim attempted to scream, Appellant put the pillow over Victim's face and slammed her head against the wooden armrest of the futon. Victim felt that she could not breathe with the pillow over her face.

Appellant held Victim down for several hours and repeatedly punched the sides of Victim's body. Around 8:00 or 9:00 PM, Appellant got off Victim and Victim curled into a fetal position. Appellant then began interrogating Victim about Mr. Gallo. According to Victim, when she admitted that she had

had sexual intercourse with Mr. Gallo, Appellant pulled up her dress and penetrated her vagina with his fingers while Victim cried. Appellant then placed those fingers against Victim's face and asked her if she wanted to smell like that. Victim did not attempt to leave again that night because she was afraid of what Appellant might do.

Around 5:00 AM, Appellant and Victim woke up. Appellant continued to talk about their relationship and his suicide. At 8:00 AM, Victim informed Appellant that she had to leave. Appellant gave Victim her keys and she ran out the door. Victim was so relieved that she said, "I'm free." *Id.* at 37. Appellant then sent Victim a text message stating that if she had stayed with him instead of Mr. Gallo the night before, they would have both been free.

Victim immediately drove to a police station to report what happened. On the way, Victim called her friend, Jessi Chavez Collins, and told her what happened while she was crying. Victim also called her sister and asked her to block Appellant's telephone number from their family members' telephones.

Once at the police station, Victim filled out a police report and staff escorted her to the Special Victim's Unit, where Victim spoke to a detective and submitted to a rape test. A nurse took photographs of bruising on Victim.

On May 17, 2018, police arrested Appellant and charged him with Aggravated Assault, Strangulation, Aggravated Indecent Assault, Unlawful Restraint, Indecent Assault, Simple Assault, Recklessly Endangering Another Person, and False Imprisonment.

On October 24, 2019, the court held a bench trial. The Commonwealth presented testimony from Victim, Ms. Collins, and Police Officer Sachetti,[2] each of whom testified in accordance with the above recitation of facts. In addition, Police Officer Sachetti testified that while he was filling out Victim's police report, he observed bruising on her cheeks and arm.

Appellant testified in his own defense, admitting that he: (1) had threatened to expose Victim's personal life to her parents; (2) drove to Mr. Gallo's house to confront her about lying; (3) met Victim at the coffee shop; and (4) drank five shots of alcohol when he was in the apartment with Victim. Appellant also testified that it was Victim who had wanted to drink alcohol. He admitted that he had vomited but claimed that it was the result of Victim admitting to having another lover.

Appellant testified that around 4:00 PM, he took Victim's keys and prevented her from leaving because she was too drunk to drive. Appellant further testified that he picked up Victim and took her to the futon, where he put his arms around her to control her. Appellant denied trying to suffocate Victim with a pillow and denied hitting Victim.

Appellant also testified that Victim woke up at 5:30 AM and wanted to leave. Appellant explained that he did not want her to leave because he thought she was still drunk. When Victim finally left, Appellant followed her to her car and heard her say she was free. Appellant admitted that he sent

---

[2] Officer Sachetti's first name does not appear in the notes of testimony.

Victim a text message saying if she left Mr. Gallo, they would both be free. Appellant testified that he contacted Victim's parents after she left to inform them about Victim's lifestyle but claimed that he did so out of fear for Victim's safety.

The parties stipulated that Appellant had a reputation for being a peaceful, nonviolent, law-abiding person.

At the conclusion of the bench trial, the court found Appellant guilty of Simple Assault and False Imprisonment. Appellant waived a pre-sentence investigation report and proceeded immediately to sentencing. The trial court sentenced Appellant to two years of probation for each conviction to be served concurrently. The court also issued a stay away order, and mandated alcohol treatment.

On November 1, 2019, Appellant, who was represented by counsel, filed a *pro se* post-sentence motion and the trial court scheduled a hearing. That same day, Appellant's counsel filed a motion to withdraw as counsel. On November 22, 2019, the trial court granted counsel's motion to withdraw and continued the hearing. After numerous continuances and delays, on June 14, 2021, Appellant's newly obtained counsel filed a supplemental post-sentence motion. On August 18, 2021, after a hearing, the trial court denied Appellant's post-sentence motion.[3]

---

[3] The record reflects that Appellant asserted an oral motion at this hearing seeking the judge's recusal which, as discussed *infra*, the court denied.

On September 24, 2021, almost two years after the court imposed his judgment of sentence, Appellant filed a counseled notice of appeal.[4] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

**A.**

As an initial matter, we must determine whether we may address this appeal as it is well-settled that "the timeliness of an appeal implicates our jurisdiction and may be considered *sua sponte."* **Commonwealth v. Crawford**, 17 A.3d 1279, 1281 (Pa. Super. 2011). "In order to perfect a timely appeal, a defendant must file a notice of appeal within 30 days of the imposition of his sentence, unless he files a timely post-sentence motion within 10 days of sentencing, thereby tolling that 30–day window." **Commonwealth v. Leatherby**, 116 A.3d 73, 78 (Pa. Super. 2015); Pa.R.A.P. § 903; Pa.R.Crim.P. 720(a).

Generally, *pro se* filings submitted by counseled defendants are treated as legal nullities that have no tolling effect because the filing constitutes improper hybrid representation. **Commonwealth v. Williams**, 151 A.3d 621, 623 (Pa. Super. 2016). Exceptions to the rule exist in the rare instance where an appellant is "abandoned by counsel and the trial court fail[s] to timely appoint new counsel[.]" **Leatherby**, 116 A.3d at 79 (emphasis omitted). This exception exists because an appellant "should not be precluded from appellate review based on what was, in effect, an administrative

---

[4] Appellant filed his notice of appeal one year, eleven months, and one day after the court entered his judgment of sentence.

- 7 -

breakdown on the part of the trial court." ***Id***. Moreover, this Court has repeatedly declined to quash an appeal "when the defect resulted from an appellant's acting in accordance with misinformation relayed to him from the trial court." ***Commonwealth v. Stansbury***, 219 A.3d 157, 160 (Pa. Super. 2019) (compiling cases for the same proposition).

Upon review, we decline to quash this appeal as untimely. Appellant filed his *pro se* post-sentence motion the same day that counsel filed his motion to withdraw. Technically, Appellant was still represented by trial counsel, rendering Appellant's motion a legal nullity. However, the trial court failed to forward the motion to counsel and/or inform Appellant that his post-sentence motion was a legal nullity. Instead, by scheduling a post-sentence motion hearing, the court misled Appellant into thinking that he had filed a valid post-sentence motion that had tolled the time he had to file a timely notice of appeal. Moreover, the trial court failed to grant counsel's motion to withdraw until there was only one day left in the appeal period even though counsel clearly indicated in the motion that he was not going to file post-sentence motions or a notice of appeal on behalf of Appellant. In these particular circumstances, we find that Appellant was effectively abandoned by counsel and that an administrative breakdown occurred. Accordingly, we decline to quash the appeal as untimely and will proceed to address the merits of Appellant's claims.

**B.**

Appellant raises the following issues for our review:

1. Did the trial court err in finding Appellant guilty of Simple Assault when the evidence was insufficient to show that Appellant caused or attempted to cause bodily injury to [Victim] and where the testimony of [Victim] was explicitly found to be not credible by the trial court?

2. Did the trial court err in finding Appellant guilty of False Imprisonment when the evidence was insufficient to show that Appellant restrained [Victim] in a way other than to prevent her from driving while she was severely intoxicated and where the evidence showed that Victim had hours in which she could have left their shared apartment while Appellant slept but instead chose to say and where the trial court found Victim not credible?

3. Did the trial court err in finding Appellant guilty of Simple Assault when the verdict is against the weight of the evidence and is so contrary to the evidence that it shocks one's sense of justice as the evidence did not establish that [Victim] suffered bodily injury nor does it establish that Appellant intended to cause bodily injury, but rather the evidence showed that [Victim]'s injuries were caused by her own actions or by Appellant acting in self-defense and where the court explicitly found [Victim] to be not credible?

4. Did the trial court err in finding Appellant guilty of False Imprisonment when the evidence was insufficient to show that Appellant restrained [Victim] in any way other than to prevent her from driving while she was severely intoxicated and where the evidence showed that [Victim] had hours in which she could have left their shared apartment while Appellant slept but instead chose to stay and where the trial court found [Victim] not credible?

5. Did the trial court err in denying Appellant's motion for recusal and subsequently denying Appellant's Post-Sentence Motions when the court's law clerk was actively representing [Victim] in her Protection from Abuse proceedings against Appellant and had represented her during the pendency of the criminal trial in violation of Appellant's due process rights under Article I § 9 of the Pennsylvania Constitution as well as the Fifth and Fourteenth Amendments of the United States Constitution?

Appellant's Br. at 2-3 (some capitalization changed, questions reordered and renumbered for ease of disposition).

## C.

In his first two issues, Appellant raises challenges to the sufficiency of the evidence for his Simple Assault and False Imprisonment convictions. Appellant's Br. at 2-3.

"A claim challenging the sufficiency of the evidence is a question of law." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). "Our standard of review is *de novo*, and our scope of review is plenary." *Commonwealth v. Mikitiuk*, 213 A.3d 290, 300 (Pa. Super. 2019). When reviewing sufficiency challenges, we evaluate the record in the light most favorable to the verdict winner, giving the Commonwealth the benefit of all reasonable inferences to be drawn from the evidence. *Commonwealth v. Trinidad*, 96 A.3d 1031, 1038 (Pa. Super. 2014). This Court will not disturb a verdict when "there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Orr*, 38 A.3d 868, 872 (Pa. Super. 2011) (*en banc*) (citation omitted). "[T]he fact finder is free to believe all, part, or none of the evidence presented." *Commonwealth v. Mobley*, 14 A.3d 887, 889-90 (Pa. Super. 2011) (citation omitted). In reviewing a sufficiency challenge, we do not re-weigh the evidence and substitute our judgment for that of the fact-finder. *Id.* at 890.

J-S07014-23

Challenges to witness credibility pertain to the weight, not sufficiency, of the evidence. ***Commonwealth v. Melvin***, 103 A.3d 1, 43 (Pa. Super. 2014). Moreover, inconsistencies are for the fact-finder "to resolve and do not dictate a finding the evidence was not sufficient for conviction." ***Commonwealth v. Juray***, 275 A.3d 1037, 1046 (Pa. Super. 2022). Our sufficiency analysis must therefore accept the credibility and reliability of all evidence that supports the verdict. ***Commonwealth v. Breakiron***, 571 A.2d 1035, 1042 (Pa. 1990).

Finally, "the uncorroborated testimony of a single witness is sufficient to sustain a conviction for a criminal offense, so long as that testimony can address and, in fact, addresses, every element of the charged crime." ***Commonwealth v. Johnson***, 180 A.3d 474, 481 (Pa. Super. 2018).

**1.**

Appellant avers that the evidence was insufficient to prove that Victim suffered bodily injury, an element of Simple Assault. Appellant's Br. at 10. Specifically, Appellant argues that the photos of Victim's injuries—which merely show "discoloration"—contradict Victim's testimony that Appellant repeatedly slammed her head into the wall and repeatedly punched her constituting a "brutal assault." ***Id.*** at 10-11. Moreover, Appellant attacks the

credibility of Victim's testimony, categorizing it as "absurd" and "nonsensical." *Id.* at 10-11.[5]

A person is guilty of Simple Assault if he "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]" 18 Pa.C.S. § 2701(a)(1). Bodily injury is defined as an "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S. § 2301. Evidence of bruising from a physical attack can be sufficient to prove a defendant caused bodily injury. *In the Interest of M.H.*, 758 A.2d 1249, 1252-53 (Pa. Super. 2000) (holding student suffered bodily injury for purposes of simple assault where high school teacher's aide grabbed the student's arm and pushed her against a wall causing bruises on her arm that lasted several days).

Here, Victim testified that Appellant pushed her up against a wall, repeatedly slammed her head into the armrest of the futon, and repeatedly punched her. N.T. at 34-36. Officer Sachetti provided corroborating testimony that he observed bruising on Victim's arms and cheek, and photographs submitted into evidence demonstrated such. *Id*. at 118. As stated above, the trial court was free to believe all, part, or none of the evidence. It was reasonable for the fact-finder to infer from Victim's testimony

_____

[5] Appellant also argues that the trial court should have considered his testimony that he never assaulted Victim to be credible. Appellant's Br. at 12. Appellant's argument that the trial court should have believed his version of events and found Victim's testimony to be incredible is more accurately categorized as a challenge to the weight of the evidence, which we discuss *infra*.

and bruising that Appellant caused Victim substantial pain. Viewing the evidence in the light most favorable to the Commonwealth, the Commonwealth presented sufficient evidence to prove beyond a reasonable doubt that Appellant caused Victim impairment of physical condition or substantial pain.

**2.**

Appellant next avers that the Commonwealth failed to present sufficient evidence to demonstrate False Imprisonment. *Id.* at 7. Appellant argues that he was trying to prevent Victim from driving while intoxicated and endangering herself and others, rather than interfering with her liberty. *Id.* Moreover, Appellant argues that Victim had several hours in which she could have left the apartment while Appellant was sleeping and it was her own choice to stay. *Id.*

A person commits false imprisonment when he "knowingly restrains another unlawfully so as to interfere substantially with [her] liberty." 18 Pa.C.S. § 2903(a). Instantly, the trial court credited Victim's testimony that Appellant pushed Victim into their apartment, took her keys, and forcibly detained Victim when she wanted to leave. Moreover, the trial court emphasized that "although Appellant does not admit he pushed [Victim] into the apartment, he admits that he would not let her leave." Trial Ct. Op. at 19. Clearly, Appellant's actions interfered substantially with Victim's liberty. Viewing the evidence in the light most favorable to the Commonwealth, the

Commonwealth presented sufficient evidence to demonstrate False Imprisonment.

**D.**

In his next two issues, Appellant raises challenges to the weight of the evidence. Appellant's Br. at 2-3. The crux of Appellant's argument is that the trial court should have credited his version of events rather than Victim's version of events. *Id.* at 17. Appellant avers that Victim's testimony was "rife with contradictions and devoid of any corroboration." *Id.* at 19.[6]

When considering challenges to the weight of the evidence, we apply the following precepts. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2015) (citation omitted). Resolving contradictory testimony and questions of credibility are matters for the finder of fact. *Commonwealth v. Hopkins*, 747 A.2d 910, 917 (Pa. Super. 2000). It is well-settled that we cannot substitute our judgment for that of the trier of fact. *Talbert*, 129 A.3d at 546.

_____

[6] In his Statement of Questions, Appellant repeatedly contends that the trial court "explicitly" found that Victim is not credible. Appellant's Br. at 2-3. However, the record belies this representation. Upon review, the trial court found that **none** of the witnesses were **entirely** credible, but believed some of Victim's testimony based on the photographs that were submitted into evidence. The trial court stated on the record: "I don't think anybody that testified was one-hundred percent credible today [but] the photos show that something happened." N.T. Trial, 10/24/19, at 181-183. As discussed *supra*, the trial court "is free to believe all, part, or none of the evidence presented." *Mobley*, 14 A.3d at 889-90 (citation omitted).

- 14 -

Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the post-sentence motion; this court does not review the underlying question of whether the verdict is against the weight of the evidence. *Id.* at 545-46. "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is [or is not] against the weight of the evidence." *Id.* at 546 (citation omitted). "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." *Id.* (citation omitted).

Furthermore, "[i]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague[,] and uncertain that the verdict shocks the conscience of the court." *Id.* (internal quotation marks and citation omitted). As our Supreme Court has made clear, reversal is only appropriate "where the facts and inferences disclose a palpable abuse of discretion[.]" ***Commonwealth v. Morales***, 91 A.3d 80, 91 (Pa. 2014) (citations and emphasis omitted).

"[A] true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." ***Commonwealth v. Thompson***, 106 A.3d 742, 758 (Pa. Super. 2014) (citation omitted). For that reason, the trial court need not view the

evidence in the light most favorable to the verdict winner and may instead use its discretion in concluding whether the verdict was against the weight of the evidence. *Widmer*, 744 A.2d at 751 n.3.

Instantly, the trial court credited Victim's testimony over Appellant's testimony that Appellant assaulted her and restrained her. Appellant essentially asks this Court to reassess the credibility of Victim and Appellant, and reweigh the testimony and evidence presented at trial. We cannot and will not do so. Our review of the record shows that the evidence is not tenuous, vague, or uncertain, and the verdict was not so contrary as to shock the conscious. Accordingly, we discern no abuse of discretion in the trial court's denial of Appellant's weight claim.

**E.**

In his final issue, Appellant avers that the trial court judge, the Honorable Sierra Thomas Street, erred in refusing to grant a motion for recusal made prior to argument on the post-sentence motions because Judge Street's law clerk was actively representing Victim in protection from abuse proceedings. Appellant's Br. at 22. In his Brief, Appellant argues that evidence of actual bias occurred on October 20, 2021, two months after the trial court ruled on Appellant's post-sentence motion, when Judge Street denied Appellant's Motion to extend his probation by two years to preserve his PCRA rights. *Id.* at 25. Appellant further argues that the only plausible explanation for this denial is that Judge Street wanted to preclude Appellant

from exercising his PCRA rights because it could negatively affect Victim, the law clerk's client. *Id.*

"[W]e recognize that our judges are honorable, fair and competent." *Commonwealth v. Abu-Jamal,* 720 A.2d 79, 89 (Pa. 1998). Thus, "[o]ur standard of review of a trial court's determination not to recuse from hearing a case is exceptionally deferential." *Commonwealth v. Harris,* 979 A.2d 387, 391 (Pa. Super. 2009) (citation omitted). "Where a jurist rules that he or she can hear and dispose of a case fairly and without prejudice, that decision will not be overruled on appeal but for an abuse of discretion." *Commonwealth v. Dip,* 221 A.3d 201, 206 (Pa. Super. 2019) (citation omitted).

When considering a recusal request, jurists "must first make a conscientious determination of his or her ability to assess the case in an impartial manner[.] . . . The jurist must then consider whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary. This is a personal and unreviewable decision that only the jurist can make." *Abu-Jamal*, 720 A.2d at 89. The party requesting recusal must "produce evidence establishing bias, prejudice or unfairness [that] raises a substantial doubt as to the jurist's ability to preside impartially." *Commonwealth v. Tedford,* 960 A.2d 1, 55-56 (Pa. 2008) (citation omitted).

Finally, "Pennsylvania law makes clear that it is generally preferable for the same judge who presided at trial to preside over the post-conviction

proceedings. [F]amiliarity with the case will likely assist the proper administration of justice. Only where it is adequately demonstrated that the interests of justice warrant recusal, should a matter be assigned to a different judge." *Commonwealth v. Lambert*, 765 A.2d 306, 362 (Pa. Super. 2000) (citations omitted).

Upon review, we are unable to locate a written motion to recuse in the certified record and Appellant fails to indicate "where in the record the matter referred to appears."[7] To the extent that this was an oral motion, our review of the record reveals that at the beginning of the post-sentence motion hearing, the Assistant District Attorney stated, "I believe the defense has a motion to recuse." N.T. Hearing, 8/18/21, at 6. Appellant's counsel then stated, "So the issue is that I believe [your law clerk] represents [Victim] in this matter, or represented her at the time that the criminal trial was going on." *Id.* at 6. Appellant did not place any evidence on the record to support this "motion" to recuse, or enter any exhibits into evidence.

In denying Appellant's motion to recuse, Judge Street stated on the record that she was aware that the "law clerk represents someone involved – I believe the victim in this case – in another matter. And he does not work on [Appellant]'s matters because of that, because he has a conflict." *Id.* at

_____

[7] Our rules of appellate procedure require that an appellant provide "a reference to the place in the record where the matter referred to appears" or a "statement of place of raising or preservation of issues." Pa.R.A.P. 2117(c) and 2119(c) and (e). While this defect is substantial, we are nonetheless able to provide meaningful review of the issue.

- 18 -

7. In her Rule 1925(a) opinion, Judge Street further explained her decision to deny the motion:

> Appellant contends that recusal was warranted because the court's law clerk was actively representing [Victim] in her protection from abuse matter against Appellant. To be clear, the law clerk worked for the court from January 2021 to November 2021; therefore, he was not working for the court at the time of Appellant's trial or for the entirety of post-trial motions. Moreover, and as the court stated on the record, that law clerk did not work on Appellant's case. Accordingly, the court denied the request for recusal. That decision did not involve ill will, manifest unreasonableness, misapplication of the law, partiality, and/or prejudice. Accordingly, the issue is without merit.

Trial Ct. Op, filed 4/11/22, at 12. We agree. The record reflects that the law clerk did not work for Judge Street at the time of the trial, Judge Street was aware of the potential conflict when the law clerk was hired more than a year after Appellant's trial, and Judge Street ensured that the law clerk did not work on Appellant's post-sentence motions. Appellant failed to provide the court with any evidence to support his recusal motion other than generalized allegations without a clear timeline. Moreover, Appellant's claims that Judge Street exhibited actual bias when she denied Appellant's motion to extend his probation are speculative, at best, and occurred **after** Judge Street ruled on Appellant's post-sentence motion. We decline to find an abuse of discretion.

**F.**

In conclusion, the Commonwealth presented sufficient evidence to convict Appellant of Simple Assault and False Imprisonment, and the verdict

was not against the weight of the evidence. Moreover, the trial court did not abuse its discretion when it denied Appellant's motion to recuse.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/14/2023